**United States District Court**
For the Northern District of California

1

2                    UNITED STATES DISTRICT COURT

3                    NORTHERN DISTRICT OF CALIFORNIA

4

5

6   NAD KARIM,

7              Plaintiff,                    No. C 12-5240 PJH

8       v.                                   **ORDER DENYING MOTION FOR
                                             CLASS CERTIFICATION AND**
    HEWLETT-PACKARD COMPANY,                 **DENYING MOTIONS TO SEAL**
9
              Defendant.
10  _____/

11        Plaintiff Nad Karim's motion for class certification came on for hearing before this

12  court on December 11, 2013.  Plaintiff Nad Karim ("plaintiff") appeared through his counsel,

13  Jenelle Welling.  Defendant Hewlett-Packard ("defendant" or "HP") appeared through its

14  counsel, Samuel Liversidge and Blaine Evanson.  Having read the papers filed in

15  conjunction with the motion and carefully considered the arguments and the relevant legal

16  authority, and good cause appearing, the court hereby DENIES plaintiff's motion as follows.

17                              **BACKGROUND**

18        Plaintiff Nad Karim ("plaintiff") brings this putative nationwide class action on behalf

19  of purchasers of certain of defendant's laptop computers.  Plaintiff alleges that HP made

20  misrepresentations regarding the computers' wireless card (used to connect to the

21  Internet).  Plaintiff asserts two causes of action, for breach of express warranty and

22  violation of California's Consumers Legal Remedies Act ("CLRA"), but seeks class

23  certification as to only the warranty claim.

24        Plaintiff alleges that, on November 22, 2010, he visited HP's website (specifically,

25  HP's "Home and Home Office Store," or "HHO"), which allows customers to customize and

26  purchase computers directly from HP.  Complaint, ¶ 10-11.  When choosing the

27  customizable components, customers may click on a "help me decide" button that provides

28  more detailed information about the choices available to the customer.  Plaintiff started to

United States District Court

For the Northern District of California

1  go through the customization process, and was prompted to select a wireless card for

2  wireless Internet connection.  The website represented that the available wireless cards

3  could connect to wireless networks operating on two different frequencies - the 2.4 GHz

4  frequency and the 5.0 GHz frequency.  Complaint, ¶ 7.  Specifically, the website

5  represented that the wireless card would allow users to connect to the 802.11a, 802.11b,

6  802,11g, and 802.11 draft N infrastructures – and the 802.11a infrastructure operates only

7  in the 5.0 GHz band.  Id.  Computers running on the 5.0 GHz band generally operate

8  faster, both because the 5.0 GHz band inherently allows more data throughput per second,

9  and because the 2.4 GHz band suffers from interference from other devices (including

10  cordless phones, microwave ovens, and baby monitors), which congests the band and

11  slows down the transfer of data.

12      Plaintiff alleges that "[w]hen he got to the section to select a wireless card, he read

13  HP's description of the wireless card."  Complaint, ¶ 11.  Plaintiff clicked on the "help me

14  decide" link, which provided two options from which plaintiff could choose, both of which

15  used this identical language: "This technology allows flexibility to connect to most available

16  industry standard base WLAN (802.11b, 802.11a, 802.11g, and 802.11 draft N)

17  infrastructures."  See Dkt. 52-5 (Welling Decl., Ex. 4).  Because the 802.11a protocol

18  operates only on the 5.0 GHz band, and the 802.11b and 802.11g protocols operate on the

19  2.4 GHz band, plaintiff understood the wireless card to be dual-band.  Complaint, ¶ 7.

20      Plaintiff selected the wireless card to be included in his customized computer. When

21  plaintiff received the computer that he ordered, it was equipped with an "Intel Centrino-N

22  1000 802.11 b/g/n wireless card," which operates only on the 2.4 GHz frequency.

23  Complaint, ¶ 12.

24      After receiving his computer, plaintiff unsuccessfully attempted to connect his

25  computer to his home wireless network, which operates on the 5.0 GHz frequency.  He

26  then called HP's technical support team (sometime in January 2011) to inquire about the

27  problem.  HP's team told plaintiff to buy a new wireless card, specifically recommending the

28  Broadcom 4322 card, which did have dual-band capability.  Complaint, ¶ 15.  HP's team

2

United States District Court

For the Northern District of California

1   assured plaintiff that the new wireless card would be compatible with his computer.  Plaintiff

2   purchased the new card, but found that the computer would not properly install it, and

3   instead gave plaintiff an error message "warning of an incompatible or unsupported

4   wireless device."  Id., ¶ 16.  Plaintiff alleges that his computer was configured to function

5   only with single-band wireless cards, and would not function with any dual-band wireless

6   card.  Id.  HP computers are equipped with a "white list," a comprehensive list of all

7   components that are compatible with the computer.  Whenever an HP computer boots up,

8   it verifies that all connected components are included on this "white list."  If any component

9   is not on the white list, the computer will send an error message to the user.  Plaintiff

10  alleges that "HP's white list for the laptops at issue here did not include authorization for

11  any dual-band wireless cards."  Id., ¶ 14.

12          Plaintiff alleges that he "would have paid less for the computer or would not have

13  purchased it had he known that neither it nor the wireless card with which it would be

14  equipped could operate on both the 2.4 GHz and 5.0 GHz frequencies."  Complaint, ¶ 18.

15  Plaintiff further alleges that he would not have purchased the replacement wireless card

16  had he known that the computer would not permit the card to function.  Id.

17          On August 22, 2012, plaintiff filed suit in Santa Clara County Superior Court, and on

18  October 10, 2012, HP removed the case to this court.  As stated above, plaintiff's complaint

19  asserts two causes of action (breach of express warranty, and violation of CLRA), but

20  plaintiff seeks class certification as to only the warranty claim.  Specifically, plaintiff seeks to

21  certify the following class:

22          All persons residing in the United States who, between October 18, 2009 and
            April 11, 2011, customized and purchased from HP's website one of the
23          following computers: Compaq Mini CQ10, Compaq Presario CQ61z, Compaq
            Presario CQ62z, HP Mini 110, HP Mini 210, HP Mini 210 HD, HP Mini 210
24          Vivienne Tam Edition, HP Pavilion dm1z, HP Pavilion dm3t, HP Pavilion
            dm3z, HP Pavilion dm4t, HP Pavilion dm4z, HP Pavilion dv4i, HP Pavilion
25          dv4t, HP Pavilion dv5t, HP Pavilion dv6t, HP Pavilion dv6t Select Edition, HP
            Pavilion dv6z, HP Pavilion dv6z Select Edition, HP Pavilion dv7t, HP Pavilion
26          dv7t Select Edition, HP G42t, HP G60t, HP G62t, HP G71t, HP G72t, or HP
            TouchSmart tm2t.

27

28  Excluded from the class are purchasers who returned their computers and purchasers

United States District Court

For the Northern District of California

1   whose computers were equipped with a dual-band wireless card.

2                                    **DISCUSSION**

3   A.      Legal standard

4           "Before certifying a class, the trial court must conduct a 'rigorous analysis' to

5   determine whether the party seeking certification has met the prerequisites of Rule 23."

6   Mazza v. American Honda Motor Co., Inc., 666 F.3d 581, 588 (9th Cir. 2012) (citation and

7   quotation omitted).

8           The party seeking class certification bears the burden of affirmatively demonstrating

9   that the class meets the requirements of Federal Rule of Civil Procedure 23.  Wal-Mart

10  Stores, Inc. v. Dukes, __ U.S. __, 131 S.Ct. 2541, 2551 (2011).  In order for a class action

11  to be certified, plaintiffs must prove that they meet the requirements of Federal Rule of Civil

12  Procedure 23(a) and (b).

13          Rule 23(a) requires that plaintiffs demonstrate numerosity, commonality, typicality

14  and adequacy of representation in order to maintain a class.  First, the class must be so

15  numerous that joinder of all members individually is "impracticable."  See Fed. R. Civ. P.

16  23(a)(1).  Second, there must be questions of law or fact common to the class.  Fed. R.

17  Civ. P. 23(a)(2).  Third, the claims or defenses of the class representative must be typical

18  of the claims or defenses of the class.  Fed. R. Civ. P. 23(a)(3).  And fourth, the class

19  representative must be able to protect fairly and adequately the interests of all members of

20  the class.  Fed. R. Civ. P. 23(a)(4).  The party moving for class certification bears the

21  burden of establishing that the Rule 23(a) requirements are satisfied.  Gen'l Tel. Co. of

22  Southwest v. Falcon, 457 U.S. 147, 156 (1982); see also Dukes, 131 S.Ct. at 2551.

23          If all four prerequisites of Rule 23(a) are satisfied, the court then determines whether

24  to certify the class under one of the three subsections of Rule 23(b), pursuant to which the

25  named plaintiff must establish that either 1) that there is a risk of substantial prejudice from

26  separate actions; or 2) that declaratory or injunctive relief benefitting the class as a whole

27  would be appropriate; or 3) that common questions of law or fact common to the class

28  predominate and that a class action is superior to other methods available for adjudicating

4

United States District Court

For the Northern District of California

1    the controversy at issue.  See Fed. R. Civ. P. 23(b)(3).

2          The court does not make a preliminary inquiry into the merits of plaintiffs' claims in

3    determining whether to certify a class.  Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177

4    (1974).  The court will, however, scrutinize plaintiffs' legal causes of action to determine

5    whether they are suitable for resolution on a class-wide basis.  See, e.g., Moore v. Hughes

6    Helicopters, Inc., 708 F.2d 475, 480 (9th Cir. 1983).  Making such a determination will

7    sometimes require examining issues that overlap with the merits.  See Dukes, 131 S.Ct. at

8    2551-52 (acknowledging that court's "rigorous analysis" will frequently entail some overlap

9    with merits of plaintiff's underlying claim).

10          The court will consider matters beyond the pleadings, if necessary, in order to

11   ascertain whether the asserted claims or defenses are susceptible of resolution on a class

12   wide basis.  See McCarthy v. Kleindienst, 741 F.2d 1406, 1419 n.8 (D.C. Cir. 1984).

13   B.    Legal Analysis

14          The court will first address the four requirements of Rule 23(a), and then will

15   separately discuss Rule 23(b).

16          Numerosity

17          Plaintiff submits evidence that 350,000 computers were shipped without the dual-

18   band wireless card (where dual-band functionality was described on the "help me decide"

19   screen), and HP does not present any argument regarding numerosity.  Thus, the court

20   finds that this requirement is met.

21          Commonality

22          Plaintiff identifies two common questions: (1) whether HP's description of the

23   wireless cards created an express warranty by description, and (2) whether HP breached

24   that express warranty.  Plaintiff argues that HP included the same "help me decide"

25   description for all relevant laptop models, and included the same single-band wireless card

26   in all relevant computers, so the commonality requirement is met.

27          HP raises a number of challenges to plaintiff's argument.  First, HP argues that

28   plaintiff cannot prove "exposure" on a classwide basis.  HP argues that plaintiff has not

5

provided evidence that class members were "uniformly exposed to the challenged '802.11a' statement," and HP provides its own evidence that less than 4.3% of all website visitors visited any of the 20 different "help me decide" screens, and that of that 4.3%, the average person visited only 2.1 of the "help me decide" screens. See Dkt. 64 at 9.  But, importantly, HP does not provide any evidence showing what percentage of actual purchasers (i.e., putative class members) visited the "help me decide" screens.  Plaintiff provides his own evidence that only 2.5% of visitors to HP's website ultimately purchased any product.  See Dkt. 69-2 at 7.  In other words, out of all visitors to the relevant HP website, the evidence indicates that the number of people who viewed a "help me decide" screen was higher than the number of people who made a purchase – leaving open the possibility that most (or even all) of actual notebook purchasers did visit a "help me decide" screen.  Thus, while defendant argues that the reasoning of Sevidal v. Target Corp. should apply, the court finds Sevidal distinguishable from the present case.

In Sevidal, the defendant presented statistical evidence showing that "approximately 80 percent of the proposed class falls within this category – individuals who purchased an item without viewing the country-of-origin information."  189 Cal.App.4th 905, 921 (2010) (emphasis added).  If defendant had presented evidence showing that most notebook purchasers did not view a "help me decide" screen, then defendant would have a stronger argument that the reasoning of Sevidal should apply here.  But because defendant presented no statistical evidence specifically regarding the putative class members – and instead presented evidence regarding the larger pool of HP website visitors – the court cannot reach the conclusion reached in Sevidal, that "the essence of [plaintiff's] allegation is based on an alleged false representation to which the majority of class members were never exposed."  Id. at 928.

Next, HP argues that "plaintiff's claim turns on his highly individualized interpretation" of the "help me decide" language.  HP makes two arguments here: (1) plaintiff ignored the "most" qualifier in the language regarding 802.11 compatibility, and (2) plaintiff had a sophisticated understanding of the technology that is not shared among the class.  The

6

United States District Court

For the Northern District of California

1 court finds that both of these arguments lack merit. As to (1), the "help me decide"

2 language states that: "This technology allows flexibility to connect to most available industry

3 standard base WLAN (802.11b, 802.11a, 802.11g, and 802.11 draft N) infrastructures." In

4 context, the statement means that the wireless card can connect to "most" infrastructures

5 writ large, but the inclusion of specific protocols in the parenthesis can lead to only one

6 conclusion – that the word "most" includes at least all of those specifically-named protocols,

7 and may include other (but not all) unnamed protocols. HP's argument regarding the word

8 "most" is therefore rejected.

9        Argument (2) is based on the questionable contention that, if some customers do not

10 understand a representation, then the representation no longer needs to be true. Notably,

11 HP does not argue that its statement regarding 802.11 compatibility was true, it argues that

12 only plaintiff (and other similarly sophisticated class members) would have the ability to

13 understand that the statement was false. However, "section 2313 focuses on the seller's

14 behavior and obligation – his or her affirmations, promises, and descriptions of the goods."

15 Weinstat v. Dentsply Int'l, Inc., 180 Cal.App.4th 1213, 1228 (2010). The court thus rejects

16 any contention that plaintiff needs to provide evidence showing that a certain percentage of

17 class members understood HP's representation in the same manner that he did.

18        HP then argues that a plaintiff is required to show reliance to establish a breach of

19 warranty claim, and that reliance cannot be shown on a classwide basis. HP makes two

20 related arguments here; first, that the class members did not actually rely on the "help me

21 decide" language, and second, that the issue of reliance is not subject to common proof.

22 Here, HP cites a number of cases finding "reasonable reliance" to be an element of a

23 breach of express warranty claim. While it is a fairly long list[1] (including a number of cases

24 from this district), plaintiff does appear to be correct that all of the cited cases stem from

25 one California appeals court decision, Williams v. Beechnut Nutrition, 185 Cal.App.3d 135

26

27        [1]See, e.g., Castro Valley Union 76, Inc. v. Vapor Systems Tech., Inc., 2012 WL
5199458 (N.D. Cal. Oct. 22, 2012); Mance v. Mercedes-Benz USA, 901 F.Supp.2d 1147 (N.D.
28 Cal. 2012); Lam v. General Mills, Inc., 859 F.Supp.2d 1097, 1106 (N.D. Cal. 2012).

**United States District Court**
For the Northern District of California

1    (1986).  And, notably, the Williams opinion does not discuss the basis for imposing a

2    "reasonable reliance" element, and instead contains only a brief recitation of the elements

3    of an express warranty claim, and a citation to the California Supreme Court's opinion in

4    Burr v. Sherwin Williams Co., 42 Cal.2d 682 (1954).  Burr, in turn, cites to "Cal. Civil Code §

5    1732" (the predecessor to Cal. Com. Code § 2313), which provided that "[a]ny affirmation

6    of fact or any promise by the seller relating to the goods is an express warranty if the

7    natural tendency of such affirmation or promise is to induce the buyer to purchase the

8    goods, and if the buyer purchases the goods relying thereon."  See Burr, 42 Cal.2d at 696

9    n.5 (quoting Cal. Civil Code § 1732).

10          However, after Burr was decided, California Commercial Code § 2313 came into

11   effect, which represented "a significant change in the law of warranties," according to the

12   California Supreme Court.  Hauter v. Zogarts, 14 Cal.3d 104, 115 (1975).  "Whereas

13   plaintiffs in the past have had to prove their reliance upon specific promises made by the

14   seller," section 2313 "requires no such proof."  Id.  Specifically, section 2313 removed any

15   reference to "reliance," and instead provided that "[a]ny affirmation of fact or promise made

16   by the seller to the buyer which relates to the goods and becomes part of the basis of the

17   bargain creates an express warranty that the goods shall conform to the affirmation or

18   promise."  Cal. Com. Code § 2313.  The Hauter court also cited to section 2313's

19   comments, which stated that "all of the statements of the seller [become part of the basis of

20   the bargain] unless good reason is shown to the contrary."  Id. (brackets and emphasis

21   added by the Hauter court).  The Hauter court did acknowledge some ambiguity regarding

22   the impact of section 2313, with some commentators arguing that "the basis of the bargain

23   requirement merely shifts the burden of proving non-reliance to the seller," and others

24   contending that  "the code eliminates the concept of reliance altogether."  Id. at 115-16.

25   While the Hauter court saw no need to definitively resolve the reliance question, its opinion

26   made clear that a plaintiff no longer needed to affirmatively establish reliance as an

27   element of his or her express warranty claim.

28          While the California Supreme Court has not further addressed the issue, a number

United States District Court

For the Northern District of California

1    of California state appeals courts have found that "[a] warranty statement made by a seller

2    is presumptively part of the basis of the bargain, and the burden is on the seller to prove

3    that the resulting bargain does not rest at all on the representation."  Keith v. Buchanan,

4    173 Cal.App.3d 13, 23 (1985); see also Weinstat, 180 Cal.App.4th at 1229 ("Any

5    affirmation, once made, is part of the agreement unless there is 'clear affirmative proof' that

6    the affirmation has been taken out of the agreement.").  Based on Hauter, Keith, and

7    Weinstat, the court finds that plaintiff is correct that he need not establish reliance as an

8    element of his express warranty claim, and thus, need not establish reliance on a classwide

9    basis.  Instead, reliance becomes relevant only as an affirmative defense, assuming that

10   defendant can affirmatively show that the representation was not part of the "basis of the

11   bargain" (either because the putative class members did not see the representation, or

12   because they knew the actual condition of the product before purchasing it).  And because,

13   as discussed above, defendant has failed to provide evidence showing what percentage of

14   putative class members actually saw the relevant "help me decide" screen, the court finds

15   that the "help me decide" content is still presumptively part of the basis of the bargain.

16   Further, because plaintiff need not affirmatively establish reliance on the part of the class

17   members, the fact that reliance cannot be shown by common proof does not defeat

18   commonality here.  As discussed above, plaintiff need only show that the warranty

19   statement was made by HP in order for it to be presumed part of the basis of the bargain,

20   and defendant does not challenge plaintiff's ability to show, by common proof, that the

21   statement was made by HP to the putative class members.

22          Next, HP argues that plaintiff cannot establish a common injury to the proposed

23   class.  HP argues that most customers did not know what a dual-band wireless card was,

24   or did not have a dual-band router to enable use of the dual-band wireless card.  But while

25   it is true that some class members would place a higher value on the dual-band

26   functionality, plaintiff has presented a number of methods for calculating common damages

27   across the class (either the price differential between the single and dual-band cards, or the

28   cost of a universal wireless card).  HP's argument, taken to its logical conclusion, would

9

United States District Court

For the Northern District of California

1  preclude class certification in nearly every case, as it is rare to find any feature of a

2  consumer product that is equally utilized by all purchasers.  Overall, the court finds that the

3  damages argument does not defeat commonality.

4        HP then argues that plaintiff cannot establish the "notice" element with common

5  proof.  Specifically, HP argues that Cal. Com. Code § 2607(3) requires a buyer to, "within a

6  reasonable time after he or she discovers or should have discovered any breach, notify the

7  seller of breach or be barred from any remedy."  HP argues that plaintiff's demand letter

8  was not sent until January 12, 2012, which is not "within a reasonable time" as to all class

9  members, because the class runs from October 2009 to April 2011.  HP also argues that

10  different "reasonable time" standards apply to retail versus commercial purchasers, and

11  that plaintiff provided notice only as to the model of computer that he ordered (the dv7t).

12  Plaintiff counters by arguing that the notice is either sufficient or it is not, but either way, the

13  sufficiency is common to all class members.  Plaintiff further points out that HP is incorrect

14  in assuming that any purchase of two computers suggests a commercial buyer, especially

15  since the purchases were made from HP's "Home and Home Office" website, separate

16  from HP's website for commercial purchasers.  Plaintiff does not directly address the third

17  of HP's arguments (whether the notice applies to all products involved in the suit), but

18  plaintiff does argue that all computer models contained the same representation regarding

19  wireless cards, so the court agrees there is a common issue as to all computers with the

20  same representation.  That said, HP argues (in a footnote) that one of the models (the

21  dvt5) had "materially different" language in its "help me decide" screen.  If true, purchasers

22  of that model should not be included in the class, but the issue was not given full treatment

23  in this motion.  Overall, the court agrees with plaintiff that, even if the notice is not sufficient,

24  the sufficiency issue would be common to the entire class.  The court further finds that

25  defendant's "commercial buyer" argument is unduly speculative.  For these reasons, the

26  court finds that the notice requirement does not defeat commonality.

27        Finally, HP argues that its individual defenses to certain class members' claims

28  defeats commonality, the court finds that hypothetical defenses cannot be enough to defeat

United States District Court

For the Northern District of California

1  commonality.

2  Thus, the court finds that plaintiff has identified issues of law and fact that are

3  common to the class.

4  Typicality and Adequacy

5  HP argues that plaintiff is atypical and inadequate for the same reasons that it

6  argues that plaintiff had an "individualized interpretation" of the "help me decide" language.

7  Essentially, HP argues that plaintiff's sophisticated knowledge of networking technology

8  renders him different from the rest of the class.  The court again rejects this argument,

9  because plaintiff's knowledge is irrelevant to whether his claims are typical of the class, and

10  irrelevant to whether he is an adequate representative.

11  Superiority of class treatment

12  HP essentially incorporates its "commonality" arguments here, and separately

13  argues that plaintiff has not proposed a trial plan.  But plaintiff cites authority showing that

14  he need not present a formal trial plan at this time, and the court finds that class treatment

15  is the superior option in this case.

16  Predominance of common questions over individual questions

17  Defendant's primary challenge to the "predominance" prong of Rule 23(b)(3) is

18  based on plaintiff's proposed application of California law to a nationwide class.  Here, the

19  court relies on the guidance provided in Mazza v. American Honda Motor Co., Inc., 666

20  F.3d 581, 589 (9th Cir. 2012).

21  In Mazza, the court first addressed the threshold constitutional inquiry, noting that

22  "the class action proponent bears the initial burden to show that California has 'significant

23  contact or significant aggregation of contacts' to the claims of each class member."  666

24  F.3d at 589 (quoting Washington Mutual Bank v. Superior Court, 24 Cal.4th 906, 921

25  (2001)).  To satisfy that initial burden, plaintiff argues that the presence of HP's

26  headquarters in California, and the presence of the HHO website team in California

27  (including the author of the "help me decide" content at issue) do give California "significant

28  contact" with the claims of each class member.  The court agrees, and finds that plaintiff

11

United States District Court

For the Northern District of California

1   has shown that California has significant contact to the claims of each class member.

2   After plaintiff satisfies the initial burden, "the burden shifts to the other side to

3   demonstrate that foreign law, rather than California law, should apply to class claims."  666

4   F.3d at 590 (citing Washington Mutual at 921).  California law may be used on a classwide

5   basis only if the interests of other states in having their own laws applied does not outweigh

6   California's interest in applying its law.  To compare the various states' interests, courts use

7   a three-part test[2]:

> First, the court determines whether the relevant law of each of the potentially
> affected jurisdictions with regard to the particular issue in question is the
> same or different.
>
> Second, if there is a difference, the court examines each jurisdiction's interest
> in the application of its own law under the circumstances of the particular
> case to determine whether a true conflict exists.
>
> Third, if the court finds that there is a true conflict, it carefully evaluates and
> compares the nature and strength of the interest of each jurisdiction in the
> application of its own law to determine which state's interest would be more
> impaired if its policy were subordinated to the policy of the other state, and
> then ultimately applies the law of the state whose interest would be more
> impaired if its law were not applied.

16  Mazza, 666 F.3d at 590 (citing McCann v. Foster Wheeler LLC, 48 Cal.4th 68, 81-82

17  (2010)).

18  As to the first prong, defendant argues that the laws of different states vary as to

19  "when a statement becomes part of the 'basis of the bargain.'"  Defendant argues that

20  "many states require an affirmative showing of consumer reliance," or require consumers to

21  "show knowledge of the statement prior to purchase," whereas other states employ a

22  burden-shifting method based on rebuttable presumptions.  The court does note that a

---

26  [2]Plaintiff argues that the three-step "governmental interest" test does not apply, and
27  instead argues that Cal. Com. Code § 1301(b) provides the relevant analysis, which does not involve weighing the interests of the various states in applying their own laws.  However, plaintiff provides the court with no reason for avoiding the three-part test articulated in Mazza,
28  and the court finds that the Mazza test does indeed apply.

**United States District Court**

For the Northern District of California

1   number of states (including Texas, Louisiana, Iowa, and Minnesota)[3] do require plaintiffs to

2   make an affirmative showing of reliance.

3           Plaintiff responds by arguing that defendant has not met its burden to identify

4   differences in states' laws.  Plaintiff points out that, in Mazza, the defendant "exhaustively

5   detailed the ways in which California law differs from the laws of the 43 other jurisdictions in

6   which class members reside."  Plaintiff argues that HP has merely provided "examples" of

7   different state laws, and then "generically asserts that each state has an interest in applying

8   its own law."

9           While plaintiff may be correct that HP's list of differences in state laws is not as

10  "exhaustive" as the Mazza defendant's list, it does not need to be.  HP need only show

11  "material" differences in state law, and given the court's previous finding that California's

12  express warranty law does not require a showing of reliance, the court does find that the

13  differences in state laws regarding "reliance" are material.  In fact, the Mazza court

14  specifically stated that, in certain instances, "the reliance requirement will spell the

15  difference between the success and failure of the claim."  666 F.3d at 591.  The court finds

16  that the reliance requirement is similarly critical to the class claims here, and thus,

17  defendant has met its burden to identify differences in the laws of the various states.

18          Next, the court examines each jurisdiction's interest in the application of its own law

19  to determine whether a true conflict exists.  As mentioned above, Mazza directly addressed

20  the differences in states' laws regarding "reliance," and found that the differences would be

21  dispositive in many instances.  Mazza then went on to find that "each state has an interest

22  in setting the appropriate level of liability for companies conducting business within its

23  territory," and that those foreign states' "strong interest in the application of their laws to

24

25          [3]See, e.g., McManus v. Fleetwood Enterprises, Inc., 320 F.3d 545, 550 (5th Cir. 2003)
    (holding that Texas law requires reliance as an element of an express warranty claim); Evans
26  v. Ford Motor Co., 484 F.3d 329, 336 (5th Cir. 2007) ("To prevail on an express warranty claim
    under Louisiana law, someone injured by using a product must adduce evidence that he or she
27  had read or was aware of the express warranty and was induced to use the product because
    of it"); Hendricks v. Callahan, 972 F.2d 190, 194 (8th Cir. 1992) (holding that Minnesota law
28  requires plaintiffs to "show some form of reliance on the warranty to succeed").

United States District Court

For the Northern District of California

1 | transactions between their citizens and corporations doing business within their state"

2 | outweighed California's "attenuated" interest in applying its own laws to residents of foreign

3 | states.  666 F.3d at 594.  The court finds that Mazza controls here, and thus, the court finds

4 | that a true conflict does exist, and that the interests of foreign states in applying their own

5 | laws does outweigh California's interest in applying its laws on a nationwide basis.  Thus,

6 | because California law cannot be used on a classwide basis, the court finds that common

7 | questions do not predominate over individual questions, and for that reason, the

8 | court DENIES plaintiff's motion for class certification.  Because neither party addressed the

9 | possibility of certifying an alternate class consisting of only California residents, the court

10 | does not address any such alternative here.

11 | Finally, there are three motions to seal pending before the court.  The first, filed by

12 | plaintiff on August 16, 2013, seeks the sealing of (1) the parties' "stipulation regarding

13 | summary of electronic data" and (2) portions of plaintiff's motion for class certification.  See

14 | Dkt. 53.  Defendant filed a (untimely) supporting declaration on August 23, 2013, arguing

15 | that the stipulation summarizes the sales data provided to plaintiff, which contained "the

16 | names, addresses, email addresses, and other information about putative class members'

17 | purchases from HP."  See Dkt. 56.  Defendant further argues that its "practice is not to

18 | disclose such granular sales, customer, and WLAN component information, and the

19 | disclosure of this information would harm HP's competitive interests."  Id.  While the court

20 | agrees that actual customer information would warrant sealing, the parties' stipulation

21 | contains no such "granular" information, and is (as the title suggests) merely a summary of

22 | customer data, listing only the raw numbers of computers sold.  The court finds this type of

23 | generalized sales information unsuitable for sealing, and DENIES plaintiff's motion to seal.

24 | Plaintiff is directed to file these documents (including an unredacted version of his opening

25 | motion for class certification) in the public record.

26 | The second motion to seal was filed by defendant on October 18, 2013, and seeks

27 | the sealing of (1) the parties' "second stipulation regarding summary of electronic data," (2)

28 | portions of defendant's opposition to the motion for class certification, and (3) portions of

the declaration of Girish Srinivasan.  See Dkt. 63.  As to (1), the court finds that the parties'

second stipulation contains the same type of generalized sales information as the first

stipulation, and thus, the court finds it unsuitable for sealing.  As to (3), the court finds that

the Srinivasan declaration does describe the number of visitors to HP's "help me decide"

screens and the number of "clicks" on those screens, but does not disclose anything about

the functioning or design of HP's website.  Thus, the court disagrees that disclosure of such

information would harm HP's competitive interests.  And because neither (1) nor (3) provide

any basis for sealing, the court also finds unsuitable for sealing the portions of defendant's

opposition which reference the underlying information contained in (1) or (3).  Accordingly,

the court DENIES defendant's motion to seal.  Defendant is directed to re-file these

documents (including an unredacted version of its opposition to class certification) in the

public record.

The third motion to seal was filed by plaintiff on November 21, 2013, and seeks the

sealing of portions of the declaration of Michael Belch.  See Dkt. 72.  Defendant purported

to file a supporting declaration on the same day, but it appears that defendant simply re-

filed the declaration in support of its own motion to seal.  Regardless, it appears that the

Belch declaration includes certain information about HP's website that was contained in the

Srinivasan declaration.  The court thus DENIES plaintiff's motion to seal for the same

reasons that it denied defendant's motion to seal portions of the Srinivasan declaration

itself.  Plaintiff is directed to re-file an unredacted version of the Belch declaration.

All unsealed and unredacted documents shall be filed by **February 18, 2014.**

**IT IS SO ORDERED.**

Dated: February 10, 2014

PHYLLIS J. HAMILTON
United States District Judge

United States District Court
For the Northern District of California

15