1  **BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP**
   Robert Bramson (State Bar No. 102006)
2  Jenelle Welling (State Bar No. 209480)
   2125 Oak Grove Road, Suite 120
3  Walnut Creek, CA 94598
   Telephone: (925) 945-0200
4  Facsimile: (925) 945-8792

5
   Attorneys for Plaintiff
6

7

8               **UNITED STATES DISTRICT COURT**

9              **NORTHERN DISTRICT OF CALIFORNIA**

10 | NAD KARIM, on behalf of himself and all | Case No. CV 12-05240 PJH
11 | others similarly situated, |
   |                          Plaintiff, | **PLAINTIFF'S NOTICE OF MOTION**
12 | | **FOR CERTIFICATION OF**
   |        v. | **CALIFORNIA CLASS AND**
13 | | **MEMORANDUM IN SUPPORT**
14 | HEWLETT-PACKARD COMPANY, |
15 |                          Defendant. | Hearing Date:  August 5, 2015
   | | Time:            9:00 a.m.
16 | | Location:        Oakland, Courtroom 3

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**PAGE(S)**

I.      PROCEDURAL HISTORY ...................................................................................... 1

II.     STATEMENT OF FACTS ...................................................................................... 2

III.    THE COURT'S PRIOR ORDER ........................................................................... 4

IV.     LEGAL STANDARDS ........................................................................................... 6

V.      RULE 23(A) IS SATISFIED ................................................................................... 6

            1      Ascertainability is No barrier to Certification ............................... 6
            2.     Numerosity is Met ............................................................................ 7
            3.     Commonality is Met .......................................................................... 8
            4.     Typicality is Met ............................................................................. 10
            5.     Adequacy is Met ............................................................................. 10

VI.     RULE 23(B)(3) IS SATISFIED ........................................................................... 11

      A.     Common Issues Predominate Over Individual Issues ........................... 11

            1.     HP Made an Affirmation of Fact .................................................... 12
            2.     HP's Statement Became a Basis of the Bargain ........................... 13
            3.     HP Breached Its Express Warranty ............................................... 14
            4.     The Notice Requirement Does Not Defeat Predominance .............. 14
            5.     Differences in Damages Do Not Defeat Predominance .................. 15

      B.     A Class Action Is Superior To All Other Methods For The Fair And
          Efficient Adjudication Of This Controversy ......................................... 16

VII.    CONCLUSION ...................................................................................................... 18

1

## **TABLE OF AUTHORITIES**

2

3 **Cases**                                                                         **Page(s)**

4
*Alvarez v. Chevron Corp.*,
5      656 F.3d 925 (9th Cir. 2011). ................................................................................ 15

6 *Amchem Prods., Inc. v. Windsor*,
       521 U.S. 591 (1997) ....................................................................................... 11, 17
7

8 *Amgen Inc. v. Conn. Ret. Plans and Trust Funds*,
       __ U.S. __, 133 S. Ct. 1184 (2013) ............................................................................. 6
9

10 *Anderson v. Jamba Juice Co.*,
       888 F. Supp.2d 1000 (N.D. Cal. 2012) ....................................................................... 9

11 *Astiana v. Kashi Co.*,
       291 F.R.D. 493 (N.D. Cal. 2013) ........................................................................... 7, 9
12

13 *Blackie v. Barrack*,
       524 F.2d 891 (9th Cir. 1975) ..................................................................................... 15
14

15 *Brothers v. Hewlett-Packard Co.*,
       No. C-06-02254, 2007 WL 485979 (N.D. Cal. Feb. 12, 2007)............................... 8, 12
16

17 *Brown v. Hain Celestial Grp. Inc.*,
       No. C 11-03082, 2014 WL 6483216 (N.D. Cal. Nov. 18, 2014) ........................... 10, 13
18

19 *Chavez v. Blue Sky Natural Beverage Co.*,
       268 F.R.D. 365 (N.D. Cal. 2010) ............................................................................. 10

20 *Daffin v. Ford Motor Co.*,
       485 F.3d 549 (6th Cir. 2011) ....................................................................................... 9
21

22 *Fundin v. Chicago Pneumatic Tool Co.*,
       152 Cal. App. 3d 951 (1984) ....................................................................................... 8

23 *Hanlon v. Chrysler Corp.*,
       150 F.3d 1011 (9th Cir. 1998) ......................................................................... 10, 11, 17
24

25 *Hofstetter v. Chase Home Fin., LLC*,
       No. C 10-01313, 2011 WL 1225900 (N.D. Cal. Mar. 31, 2011) ................................. 6
26

27 *In re Zurn Pex Plumbing Prods. Liab. Litig.*,
       644 F.3d 604 (8th Cir. 2011) ....................................................................................... 9

28

*Johnson v. General Mills, Inc.*,
276 F.R.D. 519 (C.D. Cal. 2011) ................................................................. 14

*Keegan v. Am. Honda Motor Co.*,
284 F.R.D. 504 (C.D. Cal. 2012) ................................................................... 9

*Keith v. Buchanan*,
173 Cal. App. 3d 13 (1985) ............................................................. 8, 12, 13

*McCrary v. Elations, Co.*,
No. 13-00242, 2014 WL 1779243 (C.D. Cal. Jan. 13, 2014) ..................... 13

*Rodman v. Safeway, Inc.*,
No. 11-cv-03003, 2014 WL 988992 (N.D. Cal. Mar. 10, 2014) ................ 13

*Schramm v. JPMorgan Chase Bank, NA*,
No. LA CV 09-09442, 2011 WL 5034663 (C.D. Cal. Oct. 19, 2011) ........ 11

*Seely v. White Motor Co.*,
63 Cal.2d 9 (1962) ...................................................................................... 15

*Stearns v. Ticketmaster Corp.*,
655 F.3d 1013 (9th Cir. 2011) .................................................................... 11

*Ventura Mfg. & Implement Co. v. Warfield*,
37 Cal. App. 147 (1918) ............................................................................. 12

*Wal-mart Stores, Inc. v. Dukes*,
__ U.S. __, 131 S. Ct. 2541, 2554 (2011) ................................................... 6

*Weinstat v. Dentsply Intern. Inc.*,
180 Cal. App. 4th 1213 (2010) ............................................................ 12, 13

*Wolin v. Jaguar Land Rover N. Am.*, LLC,
617 F.3d 1168 (9th Cir. 2010) ............................................................ *passim*

*Yamada v. Nobel Biocare Holding AG*,
275 F.R.D. 573 (C.D. Cal. 2011) .................................................................. 8

**Statutes**

Cal. Com. Code § 2313 ................................................................................ 5, 13

Cal. Com. Code § 2313(1)(b) ...................................................................... 8, 12

Cal. Com. Code § 2607(3)(a) .................................................................... 12, 14

1

Cal. Com. Code § 2714(2) ................................................................................................. 15

Fed. R. Civ. P. Rule 23 ............................................................................................. *passim*

Fed. R. Civ. Proc. 23(a) ....................................................................................... 6, 7, 11

Fed. R. Civ. Proc. 23(b)(3) ....................................................................................... *passim*

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TO THE COURT, THE PARTIES AND THEIR ATTORNEYS' OF RECORD:**

Please take notice that on August 5, 2015, at 9:00 a.m., in Courtroom 3 of the above-captioned court, located at 1301 Clay Street, Oakland, California 94612, or as soon thereafter as may be heard, Plaintiff will and hereby does move pursuant to Rule 23 of the Federal Rules of Civil Procedure for an order certifying Plaintiff's breach of express warranty by description claim for class treatment on behalf of the following class:

> All persons who, between January 1, 2010 and April 11, 2011, customized and purchased from HP's website one of the following computers: Compaq Mini CQ10; Compaq Presario CQ61z; Compaq Presario CQ62z; HP Mini 110; HP Mini 210; HP Mini 210 HD; HP Mini 210 Vivienne Tam Edition; HP Pavilion dm1z; HP Pavilion dm3t; HP Pavilion dm3z; HP Pavilion dm4t; HP Pavilion dm4z; HP Pavilion dv4i; HP Pavilion dv4t; HP Pavilion dv5t; HP Pavilion dv6t; HP Pavilion dv6t Select Edition; HP Pavilion dv6z; HP Pavilion dv6z Select Edition; HP Pavilion dv7t; HP Pavilion dv7t Select Edition; HP G42t; HP G60t; HP G62t; HP G71t; HP G72t; or HP TouchSmart tm2t; and whose computer was shipped to a California address.

This Motion is based on the grounds that the class is so numerous that joinder of all members is impracticable, there are questions of law and fact common to the class, Plaintiff's claims are typical of those of the class, that he and his counsel will fairly and adequately protect the interests of the class, and that the common questions predominate over any individual ones, making a class action superior to other methods for fairly and efficiently adjudicating the controversy. Plaintiff's Motion is supported by this Notice, the included Memorandum of Points and Authorities, the Declaration of J. Welling in Support of Motion for Certification of California Class, and the following items in the Court's file: the Declarations of J. Welling (Dkt. Nos. 52-1, 69-1), Nad Karim (Dkt. No. 52-21), Dr. Zhi Ding (Dkt. No. 52-20, 69-3), Michael Syiek (Dkt. No. 52-22), Dr. Belch (Dkt. No. 69-2), and the exhibits attached thereto, the Declaration of James Morales (Dkt. No. 32-8), the Declaration of Dina Varao (Dkt. No. 32-13), the Stipulation Regarding Summary of Electronic Data (Dkt. No. 83), the other pleadings and papers on file in this action, and any such additional papers and arguments as may be presented at or before the hearing on this matter.

1

2       DATED:  April 1, 2015          BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP

3

4                                       /s/ Jenelle Welling

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I.  PROCEDURAL HISTORY

Plaintiff previously moved to certify a nationwide class consisting of owners of certain HP computer models who purchased their computers directly from HP through HP's website. Dkt. No. 52. In a detailed Order, the Court found Plaintiff had satisfied each element of Rule 23(a). Dkt. No. 78. The Court also determined that resolving Plaintiff's claims for breach of warranty by description on behalf of the putative class would be superior to other methods of adjudication, satisfying one aspect of the predominance inquiry under Rule 23(b)(3). *Id.*, at 11. The Court denied Plaintiff's motion, however, concluding that common questions of law did not predominate due to other jurisdictions' interests in applying their own warranty law. *Id.*, at 12-14.

Plaintiff subsequently sought leave to amend his complaint to assert a California only class, and for permission to file a motion to certify the proposed California only class. The Court granted Plaintiff leave to amend and found good cause to permit Plaintiff to file a second class certification motion. Dkt. Nos. 107, 124. Plaintiff now moves to certify his breach of warranty by description claim to proceed on behalf of the following class:

> All persons who, between January 1, 2010 and April 11, 2011, customized and purchased from HP's website one of the following computers: Compaq Mini CQ10; Compaq Presario CQ61z; Compaq Presario CQ62z; HP Mini 110; HP Mini 210; HP Mini 210 HD; HP Mini 210 Vivienne Tam Edition; HP Pavilion dm1z; HP Pavilion dm3t; HP Pavilion dm3z; HP Pavilion dm4t; HP Pavilion dm4z; HP Pavilion dv4i; HP Pavilion dv4t; HP Pavilion dv5t; HP Pavilion dv6t; HP Pavilion dv6t Select Edition; HP Pavilion dv6z; HP Pavilion dv6z Select Edition; HP Pavilion dv7t; HP Pavilion dv7t Select Edition; HP G42t; HP G60t; HP G62t; HP G71t; HP G72t; or HP TouchSmart tm2t; and whose computer was shipped to a California address.

Dkt. No. 112, ¶ 19. Excluded from the class are purchasers who returned their computers, purchasers whose computers were equipped with an 802.11a/b/g/n or an 802.11a/g/n compliant WLAN card, and purchasers of dv5t series computers who selected a wireless card requiring an additional payment. *Id*. HP has records of each putative class member's purchase, including the

computer model purchased, the wireless card contained in the computer, the amount paid, and the

purchaser's contact information. Dkt. No. 83 ("Data Stip."), ¶ 3.

## II.  STATEMENT OF FACTS

Though the Court is familiar with the facts of the case,  the following is a brief summary of

the facts most pertinent to the present Motion.

Plaintiff visited HP's online store ("HHO") on November 22, 2010 in search of a dual-band

notebook computer. Dkt. No. 52-21, ("Karim Decl."), ¶¶ 2-3. He followed HP's prompts to select

among the various configurations offered for the computer he desired, a dv7 Select Edition

Entertainment PC. *Id.* When he got to the screen to select from among the wireless networking

options, very little information was provided so he clicked on the "help-me-decide" link. *Id.* With

the exception that one option contained Bluetooth™ technology, HP described the options

identically. *Id.* The "help-me-decide" content stated as follows:

> Intel Wireless-N Card
> Intel's Wireless-N Mini-card is the integrated wireless LAN (WLAN) solution for
> Intel Centrino™ mobile technology. **This technology allows flexibility to connect
> to most available industry standard base WLAN (802.11b, 802.11a, 802.11g
> and 802.11 draft N) infrastructures.** Flexible roaming enables you to specify
> when roaming to different access points – whether you favor performance when
> downloading a file and need higher bandwidth or if you favor signal strength when
> needing a stable connection, such as playing games. Let the N solution help you
> maintain higher throughout [sic] under adverse conditions. DISCLAIMERS:
> Wireless access point required and is not included. Availability of public wireless
> access points limited. Wireless Internet use requires separately purchased Internet
> service contract. The specifications for the 802.11n WLAN are draft specifications
> and are not final. This may affect the ability of the PC to communicate with other
> 802.11n WLAN devices.

Dkt. No. 52-19 ("Welling Decl."), Ex. 4 (emphasis added). This description indicates that the

wireless card option is dual-band. Dkt. No. 52-20 ("Ding Decl."), ¶ 32. Plaintiff selected this

option. Karim Decl., ¶ 3.

HP equipped Plaintiff's dv7t computer with a single-band wireless card, however. Ding

Decl., ¶ 32. *See also* Welling Decl., Ex. 5 at p. 6. When Plaintiff called HP to troubleshoot his

inability to connect to the 5GHz frequency, one of HP's technicians recommended he buy and

install a replacement dual-band card. Karim Decl., ¶ 4. *See also* Welling Decl., Ex. 18 at Karim 45-

49. He did so, but the replacement dual-band card would not work with his computer. Karim Decl., ¶ 4. It turns out that HP enabled only single-band wireless cards in the BIOS whitelist for the dv7t Select Edition series. Welling Decl., Ex. 5 at p. 6. *See also* Ex. 3 at 55:6-56:9 (explaining HP's use of whitelists); Ex. 18 at Karim 46-47 ("moreover I would like to inform you that your system hardware was set up for the N-compatible wireless card so it may not be detected [] another wireless card. As a technician I suggest you please do not replace the wireless card with another advance wireless card as you can face compatibility issue."). Consequently, Plaintiff cannot simply install a dual-band card to obtain the promised functionality.

Plaintiff was not the only Californian to customize a notebook computer for which the help-me-decide content promised dual-band functionality, but for which the computer was equipped with a single-band wireless card. In fact, HP tendered to Californians more than 42,000 computers that did not meet the specifications that HP described. Data Stip., ¶ 6. Ms. Dina Varao was the HP employee who created all help-me-decide content for customized consumer notebooks sold on HHO at the time. Dkt. No. 32-13, ¶ 4. As relevant to this case, Ms. Varao created two versions of the incorrect help-me-decide content. The first version was the one Plaintiff's read, as recounted above. The second version said:

> **The Wireless 802.11b/g/n Card provides up to 270Mbps in the 2.4GHz and 5 GHz band.** It's backward compatible with b and g and provides a greater range allows you to roam further out from access point. DISCLAIMERS: Wireless access point and Internet service sold separately. Wireless Internet use requires separately purchased Internet service contract. The specifications for the 802.11n WLAN are draft specifications and are not final. This may affect the ability of the PC to communicate with other 802.11n devices. Maximum achievable download speeds are currently unknown, may not reach 56Kbps and will vary with line conditions. Upload speeds are less and also will vary.

*E.g. id.*, Ex. 8 (emphasis added). By referencing both the 2.4GHz and 5GHz frequencies, HP described the wireless cards as dual-band. Ding Decl., ¶ 32.

After creating a text file containing the help-me-decide content, Ms. Varao would "publish" the text file by electronically distributing a "Plan of Record." Declaration of J. Welling ISO CA Class ("CA Class Decl."), Ex. 1 (Varao Dep. at 23:12-24:5; 27:16-28:4; 42:6-12). For example, when HP finally changed the help-me-decide content to remove the incorrect references to dual-

band technology, Ms. Varao published the corrected content for all affected computer models that were still being offered for sale via a Plan of Record dated April 12, 2011. CA Class. Decl. at 57:6-58:17. HP produced Plans of Record spanning the class period, as well as many of the help-me-decide text files for networking components referenced therein. *Id.*, ¶ 2. Some relevant text files are missing, however, and appear not to have been retained by HP. *Id.* By referencing the Plans of Record and the available text files, one can determine the time periods for which the computer models in the putative class were offered for sale and the content for the associated help-me-decide screen. *Id.*, Ex. 1 at 68:20-70:3. According to Mr. Srinivasan, a Senior Manager of Analytics for HHO, HP tracks how many potential customers visited specific webpages and/or clicked certain links during the class period, but cannot determine which customer is associated with any particular webpage view or click. Dkt. No. 64-15, ¶ 7.

### III.  THE COURT'S PRIOR ORDER

In ruling on Plaintiff's motion to certify a nationwide class, the Court analyzed and rejected a number of HP's arguments against class certification. Dkt. No. 78. As to commonality, HP contended that Plaintiff could not prove "exposure" to the incorrect help-me-decide content on a classwide basis. In support of this argument, HP provided evidence that fewer than 4.3% of website visitors visited any help-me-decide screens. The Court rejected HP's argument because its evidence did not demonstrate anything as to the actual purchasers of the computers in question, as opposed to the far greater number of mere shoppers browsing through HP's product line. *Id.*, at 6. HP also argued that commonality could not be satisfied because it would be necessary to explore each purchaser's interpretation of the help-me-decide content, and that Plaintiff's claim turned on his "highly individualized interpretation" of the help-me-decide content which ignored the qualification "most" before the identified compatible wireless technologies. The Court found both arguments lacking merit. Dkt. No. 78 at 7.

The Court concluded that, in context, the inclusion of specific protocols in the help-me-decide content could "lead to only one conclusion—that the word 'most' includes at least all of

those specifically-named protocols, and may include other (but not all) unnamed protocols." Dkt. No. 78 at 7. The Court further noted that HP did not argue that the help-me-decide content was true, but rather that only certain sophisticated purchasers would have the ability to recognize that the statement was false. *Id.* Stating that it was a "questionable contention that, if some customers do not understand a representation, then the representation no longer needs to be true", the Court rejected HP's arguments. *Id.* HP's focus on the buyer was incorrect moreover, as warranty claims focus on "the seller's behavior and obligation." *Id.* (emphasis original).

HP also argued that Plaintiff was required to prove reliance, and that reliance could not be shown on a classwide basis. After reviewing the case law and history of California Commercial Code Section 2313, the Court determined that Plaintiff need not establish reliance as an element of his claim. *Id.*, at 9. Instead, it was HP's obligation to affirmatively show on the merits that the representation was not part of the basis of the bargain. *Id.* The Court further noted that "hypothetical defenses" to certain class members' claims cannot defeat commonality. *Id.* at 10.

The Court similarly rejected HP's argument that Plaintiff could not establish a common injury because some consumers do not understand nor use dual-band technology. "HP argument, taken to its logical conclusion, would preclude class certification in nearly every case, as it is rare to find any feature of a consumer product that is equally utilized by all purchasers." *Id.*, at 10. Further, while the sufficiency of Plaintiff's notice will be disputed on the merits, the Court found that issue of notice is common to all computer models. *Id.* at 10.

The Court determined that Plaintiff was an adequate representative with claims typical of the putative class, rejecting HP's argument that Plaintiff's knowledge of networking technology rendered him different from the class. *Id.* at 11.

The Court likewise rejected HP's attack on the superiority of proceeding on behalf of a class because HP's arguments were derivative of its commonality arguments which the Court had previously analyzed. *Id.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## IV.  LEGAL STANDARDS

Plaintiff must affirmatively demonstrate with facts providing prima facie support that the elements of Rule 23 are met. *Wal-mart Stores, Inc. v. Dukes*, __ U.S. __, 131 S. Ct. 2541, 2554 (2011) ("*Dukes*").  Rule 23(a) sets forth four requirements: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy. Fed. R. Civ. Proc. 23(a). In addition, Plaintiff must demonstrate that Rule 23(b)(3) is satisfied. A class is maintainable under Rule 23(b)(3) where "questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and where "a class action is superior to other available methods for fair and efficient adjudication of the controversy." Fed. R. Civ. Proc. 23(b)(3). While the Court must conduct a "rigorous analysis" (*Dukes*, 131 S. Ct. at 2551), merits questions may be considered only to the extent they are relevant to determining whether Rule 23 requirements are met (*Amgen Inc. v. Conn. Ret. Plans and Trust Funds*, __ U.S. __, 133 S. Ct. 1184, 1194-95 (2013)).

## V.  RULE 23(a) IS SATISFIED

### 1.    Ascertainability is No barrier to Certification

Although Rule 23 lacks any explicit requirement as to the class definition, "courts have held that the proposed class must be adequately defined and clearly ascertainable before a class action may proceed." *Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 482 (N.D. Cal. 2011). Here, the class is defined by objective criteria, and HP has detailed records from which it readily can determine whether a particular person is a class member. Data Stip., ¶ 3. Thus, Plaintiff's class satisfies the threshold ascertainability inquiry. *Hofstetter v. Chase Home Fin., LLC*, No. C 10-01313, 2011 WL 1225900, *14 (N.D. Cal. Mar. 31, 2011) (certifying class where "defendants' business records should be sufficient to determine the class membership status of any given individual").

HP may argue that the class must be defined in such a way that anyone within it would have standing, and that a purchaser who never saw the help-me-decide content could have no injury, and thus, lacks standing, rendering Plaintiff's class fatally overbroad. This argument is founded on the incorrect premise that each purchaser must prove that he or she read the wireless card description

in order to recover for HP's failure to provide a dual-band wireless card. As the Court previously held, warranty claims focus on the seller's obligation and behavior. Dkt. No. 78 at 7. As such, it is HP's obligation to prove that a particular purchaser did not see the representation or knew the true condition of the product in order to remove its statements from the basis of the bargain. *Id.* at 9. HP has not proffered any such evidence.

In addition to very specific purchaser data facilitating the administrative task of identifying class members, Plaintiff has screen shots of the help-me-decide content as it appeared on HHO (*e.g.*, Welling Decl., Exs. 4, 6, 7, 8), the original text files Ms. Varao created for the help-me-decide content (CA Class Decl., ¶ 2), the Plans of Record detailing which text files were to appear on HHO for each computer included in the proposed class (*id.*), and HP's interrogatory responses identifying each computer model series for which the help-me-decide content made reference to "802.11a" or "5GHz" (Welling Decl., Ex. 11 at 6-8). Plaintiff also has evidence pertaining to which computer model series' "help-me-decide" content HP changed to remove references to dual-band attributes. Welling Decl., Ex. 12. While it is true that HP did not retain copies of each help-me-decide screen potentially relevant to this action (Welling Decl., ¶ 20), and HP also did not retain each text file containing help-me-decide content (CA Class Decl., ¶ 2)[1], all available evidence shows that Plaintiff can prove which computer purchases involved dual-band warranty statements. Accordingly, whether framed as a standing issue or an 'overbreadth' issue, ascertainability is no barrier to class certification here. *Wolph*, 272 F.R.D at 482-83; *Astiana v. Kashi Co.*, 291 F.R.D. 493, 500 (N.D. Cal. 2013).

## 2. Numerosity is Met

Rule 23(a)(1) requires the class to be so numerous that joinder of individual class members is impracticable. Fed. R. Civ. Proc. 23(a)(1). Here, HP sold to Californians more than 42,000 customized computers which were equipped with single-band wireless cards where the help-me-

---

[1] Ms. Varao testified that she stored help-me-decide text files on a shared drive within the company. Welling Decl., Ex. 2 at 35:19-86:11, 38:7-22. HP has not yet explained why some files are missing or what search it conducted to find all pertinent files. CA Class Decl., ¶ 2.

decide content described the capabilities as dual-band. Data Stip., ¶ 4-6; Welling Decl., Exs. 5, 11, 15. The numerosity requirement is satisfied.

### 3.     Commonality is Met

"Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury . . . [and] [t]heir claims must depend on a common contention . . . of such nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at 2551 (internal quotations and citations omitted). As the Court has already ruled, there are at least two common contentions that, upon their determination, will resolve Plaintiff's and each putative class member's express warranty by description claims in one stroke.

The first is whether HP's description of the wireless cards created an express warranty. Cal. Com. Code § 2313(1)(b) ("Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description."); *Brothers v. Hewlett-Packard Co*.,  No. C-06-02254, 2007 WL 485979, *6 (N.D. Cal. Feb. 12, 2007) ("misdescriptions of specific or absolute characteristics of a product are actionable" as express warranties by description); *Fundin v. Chicago Pneumatic Tool Co*., 152 Cal. App. 3d 951, 957 (1984) (product specifications in brochure create express warranty); *Keith v. Buchanan*, 173 Cal. App. 3d 13, 21-22 (1985) (statements in brochure asserting vessel is seaworthy were specific and unequivocal creating express warranty). This is a common question suitable for class adjudication. *Yamada v. Nobel Biocare Holding AG*, 275 F.R.D. 573, 577 (C.D. Cal. 2011) (identifying whether defendant's statements in marketing brochure created an express warranty as a common question). Either HP's description created an express warranty or it did not. The outcome of this determination answers the question for all putative class members in one stroke.

The second is whether HP breached its express warranty by description. Adjudication of this question also resolves it for all putative class members in one stroke. HP either equipped Plaintiff's and putative class members' computers with dual-band capable wireless cards or it did not. Courts routinely certify express warranty claims for class treatment where the defendant's

compliance with the warranty is at issue. *See, e.g., Wolin v. Jaguar Land Rover N. Am*., LLC, 617

F.3d 1168, 1174 (9th Cir. 2010) (reversing district court's refusal to certify express warranty

claims); *Keegan v. Am. Honda Motor Co*., 284 F.R.D. 504 (C.D. Cal. 2012) (certifying express

warranty claims); *In re Zurn Pex Plumbing Prods. Liab. Litig*., 644 F.3d 604 (8th Cir. 2011)

(upholding district court's certification of express warranty claims); *Daffin v. Ford Motor Co*., 485

F.3d 549 (6th Cir. 2011) (upholding certification of express warranty claims). Here, whether HP

tendered a conforming good can be proven by HP's own records. As evidenced by HP's

interrogatory responses, HP has information concerning the content of the pertinent help-me-decide

screens, the classification of the wireless cards as single or dual band, and records of which card

was shipped to each purchaser. Welling Decl., Ex. 2 at 17:1-15, 53:17-55:1; Exs. 5, 11, 12; Data

Stip., ¶¶ 3, 5. This is classic classwide evidence and it will resolve in one stroke whether HP

tendered the product it promised. The Court previously determined that the commonality

requirement was satisfied here. Dkt. No. 78 at 5-10. Nothing about that determination is altered by

Plaintiff's proposal to certify a California-only class.

The fact that Plaintiff purchased only one computer included in the putative class is neither

unsurprising nor a barrier to finding commonality. Courts routinely find commonality met where

the proposed class representative purchased only one in a series of similarly misdescribed products.

*E.g.*, *Astiana,* 291 F.R.D. at 502; *Anderson v. Jamba Juice Co*., 888 F. Supp.2d 1000, 1006 (N.D.

Cal. 2012).

Moreover, the fact that HP described the wireless cards as dual-band in two, similar ways

does not undermine class treatment. In some help-me-decide content, HP described the wireless

cards thusly: "This technology allows flexibility to connect to most available industry standard

base WLAN (802.11b, 802.11a, 802.11g and 802.11 draft N) infrastructures." Welling Decl., Ex. ¶

4. In others, it said this: "The Wireless 802.11b/g/n Card provides up to 270Mbps in the 2.4GHz

and 5 GHz band." *Id*., Ex. 8. Both descriptions indicate dual-band operability. Ding Decl., ¶ 32.

Indeed, HP's reference to "802.11a" in the first version means that the product can

communicate in the 5GHz band—the exact representation made in the second version of the help-

me-decide content. Ding Decl., ¶ 27. That HP made this warranty in a more direct fashion in the

second version of its help-me-decide content does not render Plaintiff a-typical because he read the first version. *Chavez v. Blue Sky Natural Beverage Co*., 268 F.R.D. 365, 378 (N.D. Cal. 2010) (finding typicality met where false statement was "worded in several variations"). The evidence necessary to prove Plaintiff's warranty claim, such as Ms. Varao's testimony, Dr. Ding's testimony, HP's interrogatory responses, and the like, remains the same. As such, commonality is met.

### 4.   **Typicality is Met**

The typicality requirement is not particularly strict. The Court's inquiry is "whether other [class] members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Wolin*, 617 F.3d at 1175. Here, Plaintiff and all class members share the same injury—they were each deprived of the benefit of their bargain. HP promised the wireless cards and the computers in which they were equipped would have dual-band capabilities, but they do not. *Compare*, *e.g.*, Welling Decl., Ex. 4 *with* Ex. 5 at p. 6 (dv7t Select Edition rows). *See also id*. Exs. 12, 13 at HP0000199; Ding Decl., ¶ 32. HP's promises were not unique to Plaintiff. Quite the opposite; they were made in a uniform, public manner on HP's website as a part of each class members' purchasing process. *Id*., Ex. 2 at 28:5-22. Finally, the same course of conduct—HP's tender of a non-conforming good—injured Plaintiff and each putative class member. That Plaintiff purchased only one computer after reading one version of the incorrect help-me-decide content does not undermine Plaintiff's typicality. *Brown v. Hain Celestial Grp. Inc*., No. C 11-03082, 2014 WL 6483216, *13-14 (N.D. Cal. Nov. 18, 2014) (finding typicality where representative challenged product claims made on a variety of products not personally purchased). This element is met.

### 5.   **Adequacy is Met**

To establish adequacy of representation, the issue is whether "the named plaintiffs and their counsel have any conflicts of interest with other class members" and whether "the named plaintiffs and their counsel will prosecute the action vigorously on behalf of the class." *Hanlon v. Chrysler*

*Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). Here, nothing in the record reveals any conflicts between Plaintiff and class members. Plaintiff is engaged in the litigation, responding to HP's 47 document requests and 12 interrogatories, as well as participating in litigation decision-making and strategy. Karim Decl., ¶¶ 5-6. He meets the adequacy test. Plaintiff's counsel are similarly adequate, possessing the skills and commitment to prosecuting this action on behalf of the putative class, as the firm resume attached as Exhibit 14 to the Welling Declaration demonstrates. There is no reason for the Court to alter its prior finding that Rule 23(a)(4) is met here. Dkt. No. 78 at 11.

## VI.   RULE 23(b)(3) IS SATISFIED

Rule 23(b)(3) requires two separate inquiries: (1) do issues common to the class "predominate" over issues unique to individual class members, and (2) is the proposed class action "superior" to other methods available for adjudicating the controversy. Fed. R. Civ. Proc. 23(b)(3). The Court previously found that it was superior for Plaintiff's warranty claim to proceed on behalf of a class. Dkt. No. 78 at 11-14. Plaintiff submits that there is no reason for the Court to alter its conclusions as to superiority.  The Court also previously concluded that the application of multiple state laws to a nationwide class prevented a finding of predominance. (*Id.*).  Plaintiff's current proposal to certify solely a California class avoids that concern. As such, Rule 23(b)(3) is satisfied.

### A.        Common Issues Predominate Over Individual Issues

Although the predominance requirement is "far more demanding" than the commonality requirement (*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997)), it is readily met here. If common questions "present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication," then "there is clear justification for handling the dispute on a representative rather than on an individual basis," and the predominance test is satisfied. *Hanlon*, 150 F.3d at 1022. The predominance inquiry begins with the elements of the causes of action. *Schramm v. JPMorgan Chase Bank, NA*, No. LA CV 09-09442, 2011 WL 5034663, *7 (C.D. Cal. Oct. 19, 2011) (quoting *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1020 (9th Cir. 2011)).

Section 2313(1), subsections (a) and (b), of the California Commercial Code govern Plaintiff's cause of action for breach of express warranty. It states:

> (1) Express warranties by the seller are created as follows:
>
> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
>
> (b) Any description of the goods which is made a part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

Cal. Com. Code § 2313(1)(b).[2] Hence, to prove a breach of express warranty by description, Plaintiff must prove that: (1) HP's statements constitute an "affirmation of fact or promise" or a "description of the goods;" (2) HP's statements were part of the basis of the bargain; and (3) the warranty was breached. *Weinstat v. Dentsply Intern. Inc.*, 180 Cal. App. 4th 1213, 1227 (2010). Plaintiff must also prove that HP was notified of the breach within a reasonable period of time (§ 2607(3)(A)) or that HP waived its right to notice (*e.g.*, *Ventura Mfg. & Implement Co. v. Warfield*, 37 Cal. App. 147, 162 (1918) (seller with actual knowledge of non-conformity waives right to notice).

### 1.   HP Made an Affirmation of Fact

When a seller makes a statement that is specific and unequivocal, that statement is an express warranty. *Brothers*, 2007 WL 485979 at *6-7; *Keith*, 173 Cal. App. 3d at 21-22. Here, HP made specific and unequivocal statements that the wireless cards would be dual-band capable. Ding Decl., ¶ 32. In some instances, HP stated that the subject wireless card: "allows flexibility to connect to most available industry standard base WLAN (802.11b, 802.11a, 802.11b and 802.11 draft N) infrastructures." *E.g.*, Welling Decl., Ex. 4. In other instances, HP stated that the subject wireless card "provides up to 170 Mbps in the 2.4GHz and 5GHz band." *Id.*, Ex. 8. In the context of the computers at issue here, references to 802.11a and the 5GHz frequency both describe dual-band wireless cards. Ding Decl., ¶ 32. There is no material difference in the language of the help-

---

[2] All further references are to the Commercial Code unless noted.

me-decide content at issue. As such, it is appropriate to include all purchasers of the computer

models proposed in the class because the alleged affirmation of fact is the same. *Wolin*, 617 F.3d at

1174; *Brown*, 2014 WL 6483216 at *15-18 (certifying warranty claims). Accordingly, common

questions predominate over any individual issues on the first element of Plaintiff's cause of action.

### 2. HP's Statement Became a Basis of the Bargain

A seller's affirmations of fact automatically become a part of the basis for the bargain. As

explained in the Official Comments:

> In actual practice affirmations of fact made by the seller about the goods during a
> bargain are regarded as part of the description of those goods; hence no particular
> reliance on such statements need be shown in order to weave them into the fabric of
> the agreement. Rather, any fact which is to take such affirmations, once made, out
> of the agreement requires clear affirmative proof.

§ 2313, foll. U.C.C. cmt. 3. Hence, it is not necessary for Plaintiff to prove that he or any other

class member saw or relied on HP's statement in the course of the transaction for it to become a

part of the basis for the bargain. Dkt. No. 78 at 9 ("Based on *Hauter*, *Keith*, and *Weinstat*, the court

finds that plaintiff is correct that he need not establish reliance as an element of his express

warranty claim, and thus, need not establish reliance on a classwide basis."). Because HP's

statements automatically become a part of the basis for the bargain, individual issues of reliance do

not matter and thus, as a matter of law, cannot predominate.

To the extent HP proffers evidence that any particular class member *knew* he or she was

purchasing a single-band networking card, thereby rebutting the presumption that the

misrepresentation formed part of the basis of the bargain as to that person, this would not defeat

predominance because "the possibility that a defendant may be able to defeat the showing of an

element of a cause of action 'as to a few individual class members does not transform the common

question into a multitude of individual ones.'" *Weinstat*, 180 Cal.App.4th at 1235. *See also*

*McCrary v. Elations, Co*., No. 13-00242, 2014 WL 1779243, *8 (C.D. Cal. Jan. 13, 2014)

(rejecting defendant's claim of due process right to defend against class membership by

challenging individual circumstances of each class member's purchase); *Rodman v. Safeway, Inc.*,

No. 11-cv-03003, 2014 WL 988992, *10 (N.D. Cal. Mar. 10, 2014) (rejecting proposition that right

to present affirmative defense defeats predominance where defense potentially applied to small percentage of class). *Cf. Johnson v. General Mills, Inc.*, 276 F.R.D. 519, 524 (C.D. Cal. 2011) ("The fact that liability under the CLRA may be established classwide by an inference of reliance does not deprive Defendants' of their opportunity to challenge each class member's claim."). The second element of Plaintiff's cause of action poses no barrier to class treatment.

### 3.  HP Breached Its Express Warranty

Plaintiff also must prove that HP breached its promise that the wireless cards would be dual-band capable. The most direct route to establish that HP tendered a non-conforming good is using HP's internal records. HP's internal records reflect whether any particular wireless card was manufactured to be dual-band versus single band. Welling Decl., Exs. 5, 15. *See also* Ex. 2 at 26:17-24. Because HP described the wireless card options for Plaintiff's unit as having dual-band capabilities (*id.*, Ex. 4; Ding Decl., ¶ 32), but HP tendered a computer equipped with a single-band wireless card (Welling Decl., Ex. 5 at p. 6; Ding Decl., ¶ 32), HP breached its express warranty. The same proof can be made for each putative class member without class members' individual testimony and without inquiry into any class member's particular situation. Welling Decl., Exs. 5, 11, 15; Data Stip., ¶ 3. The jury can determine whether HP is liable to Plaintiff and to all class members for breaching its express warranty in one stroke. As such, the predominance requirement is met.

### 4.  The Notice Requirement Does Not Defeat Predominance

In California, a buyer is required to provide a manufacturer with whom the buyer directly dealt notice of an alleged breach of express warranty within a reasonable time of discovering the breach. § 2607(3)(a); *Alvarez v. Chevron Corp.*, 656 F.3d 925, 932 (9th Cir. 2011). Here, Plaintiff will be able to prove that HP received notice on behalf of the putative class of its alleged breach on two separate occasions. Welling Decl., Exs. 16, 17. Notice poses no barrier to class treatment. Dkt. No. 78 at 10 ("Overall, the court agrees with plaintiff that, even if the notice is not sufficient, the sufficiency issue would be common to the entire class.").  *Accord Wolin*, 617 F.3d at 1173-74 (reversing denial of certification for breach of warranty class).

**5.**      <u>Differences in Damages Do Not Defeat Predominance</u>

It is well-settled in the Ninth Circuit that the need to calculate an individual class member's portion of a recovery does not defeat predominance. *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 513 (9th Cir. 2013); *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975); *Wolph,* 272 F.R.D. at 487 (predominance inquiry "rests not on whether individualized damages determinations will be necessary but on legal or factual questions that qualify each class member's case as a genuine controversy."). As discussed below, calculating the recovery due to each class member in this case is a mechanical task irrespective of which measure of damages is employed. Accordingly, class certification should be granted.

The standard measure of actual damages in a breach of warranty case is the difference between "the value of the goods accepted and the value they would have had if they had been as warranted." § 2714(2). Using this measure here, each class member's actual damages would be the difference in value between the computers as equipped with single-band wireless card versus the value of the computers as equipped with dual-band wireless cards.

The marketplace for consumer electronics generally reflects a price differential between dual-band products and single-band products, with dual-band products being more expensive. Welling Decl., Ex. 3 at 51:6-16. Ding Decl., ¶ 31. There are multiple ways to measure that difference for the computers and wireless cards at issue here. Dkt. No. 52-22 ("Syiek Decl."), ¶ 12. A readily available measure of the difference in value between what HP promised and what HP delivered is HP's own valuation of the difference. *Id.*, at ¶ 22. *See also* Welling Decl., Exs. 8, 19. *Id.*, Ex. 3 at 18:12-25.

For those purchasers, like Plaintiff Karim, for whom a replacement dual-band wireless card is not viable due to HP's whitelist restrictions, the damage may be measured as the price he paid for the computer because the unit cannot be modified to provide the promised performance. *Seely v. White Motor Co.*, 63 Cal.2d 9, 14 (1962). HP has records of each class member's purchase price and the unit purchased. Data Stip., ¶ 3. There is an after-market alternative that can allow a computer equipped with a single-band wireless card to achieve dual-band functionality, however.

That alternative is a dual-band Wi-Fi USB adaptor. Syiek Decl., ¶ 35. This is not a perfect market substitute for HP actually having provided what it promised because a Wi-Fi USB adaptor will not have the same performance as an on-board wireless card, but the trier of fact may find it a reasonable market substitute, and thus, an alternate basis for measuring damages. Syiek Decl., ¶ 35.

Other methodologies and sources of data exist by which Plaintiff could quantify at trial the difference in value between what HP promised and what it provided. Syiek Decl., ¶¶ 19-21, 23-24. Because HP sold a limited variety of wireless cards across all class computers (Data Stip., ¶ 5), the task of valuing the difference between the value of what HP promised versus what HP provided is manageable.  No more is required at this stage.

### B.   A Class Action Is Superior To All Other Methods For The Fair And Efficient Adjudication Of This Controversy

Rule 23(b)(3) requires the Court to determine whether "a class action is superior to other available methods for a fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). The Court previously concluded that class treatment is the superior option for this case (DKt. No. 78 at 11), and nothing about the narrowed, California-only class here disturbs that finding. Weighing heavily in favor of class certification is the fact that certification of Plaintiff's claims is the only economically feasible method for the fair and efficient adjudication of this controversy. Any individual class member's damages remain modest relative to both the time and expense required to properly prosecute the claim and HP's financial resources. Individual class members have no economic ability or incentive to wage costly litigation against a well-financed defendant such as HP.

The four specific factors listed in the rule compel the conclusion that a class action is superior to resolve the claims of Plaintiff and the putative class. The first factor is the interest of each member in "individually controlling the prosecution or defense of separate actions." Fed. R. Civ. P. 23(b)(3)(A). Here, the interest of class members in individually controlling separate actions is minimal: while the aggregate damages of the class are significant, the damages of each individual class member will be relatively small. Given the expense of securing counsel and pursuing claims separately, class members have little interest in maintaining individual actions.

1    *Hanlon*, 150 F.3d at 1023 ("even if efficacious, these claims would not only unnecessarily burden

2    the judiciary, but would prove uneconomic for potential plaintiffs [since] [i]n most cases, litigation

3    cost would dwarf potential recovery [and] [i]n this sense, the proposed class action is

4    paradigmatic."). Indeed, the Supreme Court recognized that, absent class treatment, similarly

5    situated consumers with relatively small but nevertheless meritorious claims for damages would, as

6    a practical matter, have no means of redress because of the time, effort and expense required to

7    prosecute individual actions. *Amchem*, 521 U.S. at 617. Few of the putative class members could

8    afford to undertake individual litigation against HP to recover the relatively small damages at issue,

9    but the failure to obtain a remedy for HP's breach of express warranty imposes a real burden to

10    class members. If the class device were unavailable here, an economic injustice would result: the

11    putative class, as a practical matter, would have no meaningful redress and HP would be unjustly

12    enriched.

13       The second factor, "the extent and nature of any litigation concerning the controversy

14    already commenced" by class members also supports proceeding with this action. To Plaintiff's

15    knowledge, there are no other actions currently pending in any forum involving these claims.

16    Welling Decl., ¶ 21.

17       The third factor is the desirability "of concentrating the litigation of the claims in the

18    particular forum." Fed. R. Civ. P. 23(b)(3)(C). This forum is an appropriate forum for the

19    resolution of Plaintiff's and the class' claims not only because HP is headquartered in this District,

20    but also because in removing this action (Dkt. No. 1), HP specifically sought this forum. Moreover,

21    every class member's transaction bears a relationship to this forum, making it an appropriate forum

22    in which to concentrate the litigation.

23       The fourth and final factor is "the difficulties likely to be encountered in the management of

24    a class action." Fed. R. Civ. P. 23(b)(3)(D). To date, the parties have encountered no difficulties in

25    managing this case as a class action and this case can be tried and adjudicated as a class action. As

26    discussed above in Section V(A), all of the evidence necessary to prove the breach of warranty by

27    description claim is common to each member of the putative class. The judicial economies served

28    by introducing HP's records as to the warranty statement made and the actual capabilities of the

wireless cards once, in a class proceeding, far outweigh the repetitious introduction of the same evidence in tens of thousands of individual trials. *Wolin*, 617 F.3d at 1176 ("Forcing individual [consumers] to litigate their cases, particularly where common issues predominate for the proposed class, is an inferior method of adjudication.").

## VII.  CONCLUSION

The determination of the relief deserved by tens of thousands of Californians who purchased products that HP warranted as capable of dual-band wireless connectivity is precisely the sort of issue that should be tried once, in a single court, with all of the facts marshaled by the parties on a level playing field. If HP is correct and it has not tendered a product that fails to conform to its description, it deserves the res judicata protection that only a class action can provide. *In re: Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 861 (6th Cir. 2013). If, however, HP warranted dual-band performance and failed to deliver it, as Plaintiff believes the jury will conclude, it must be held accountable. The only meaningful way for ordinary consumers to do so, given all of the difficulties and expenses associated with litigating individual cases against a massive, well-funded corporation like HP, is by way of class action.

Dated:  April 1, 2015                                    BRAMSON, PLUTZIK, MAHLER &
                                                         BIRKHAEUSER, LLP


                                                         _____/s/ Jenelle Welling_____
                                                         Jenelle Welling
                                                         Attorneys for Plaintiff