UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

NAD KARIM,

            Plaintiff,

    v.

HEWLETT-PACKARD COMPANY,

            Defendant.

Case No. 12-cv-5240-PJH

**ORDER GRANTING MOTION FOR CERTIFICATION OF A CALIFORNIA CLASS**

On August 5, 2015, plaintiff's motion for certification of a California class came on for hearing before this court.  Plaintiff Nad Karim ("plaintiff") appeared through his counsel, Jenelle Welling.  Defendant Hewlett-Packard Company ("defendant" or "HP") appeared through its counsel, Samuel Liversidge and Blaine Evanson.  Having read the papers filed in conjunction with the motion and carefully considered the arguments and the relevant legal authority, and good cause appearing, the court hereby rules as follows.

## BACKGROUND

This suit arises out of plaintiff's purchase of a laptop computer from HP's website.  Plaintiff alleges that HP made misrepresentations regarding the computer's wireless card (used to connect to the Internet), and brings this suit on behalf of himself and all others similarly situated.  The operative first amended complaint ("FAC") asserts two causes of action, one for breach of express warranty, and one under California's Consumers Legal Remedies Act ("CLRA"), but plaintiff seeks certification only as to the warranty claim.

Plaintiff alleges that, on November 22, 2010, he visited HP's website, which allows customers to customize and purchase computers directly from HP.  FAC, ¶ 10.  When

United States District Court
Northern District of California

1   choosing the customizable components, customers may click on a "help me decide" (or

2   "HMD") button that provides more detailed information about the choices available to the

3   customer.

4        Plaintiff alleges that "[w]hen he got to the section to select a wireless card, he read

5   HP's description of the wireless card."  FAC, ¶ 11.  HP represented that the wireless card

6   option for his base model would operate on both the 2.4 GHz and the 5.0 GHz

7   frequencies.  Id.  However, when plaintiff received the computer that he ordered, it was

8   equipped with an "Intel Centrino-N 1000 802.11 b/g/n wireless card," which operates only

9   on the 2.4 GHz frequency.  Id., ¶ 12.  Plaintiff alleges that he "would have paid less for

10   the computer or would not have purchased it had he known that neither it nor the wireless

11   card with which it would be equipped could operate on both the 2.4 GHz and 5.0 GHz

12   frequencies."  FAC, ¶ 18.

13        Plaintiff previously moved for certification of a nationwide class, but the court

14   denied the motion for failure to meet the "predominance" requirement of Rule 23(b)(3).

15   See Dkt. 78.  Plaintiff subsequently amended his complaint to limit the class allegations

16   to putative class members within California.  Plaintiff now seeks certification of the

17   following class:

18           All persons who, between January 1, 2010 and April 11, 2011, customized
19           and purchased from HP's website one of the following computers: Compaq
        Mini CQ10, Compaq Presario CQ61z, Compaq Presario CQ62z, HP Mini
20           110, HP Mini 210, HP Mini 210 HD, HP Mini 210 Vivienne Tam Edition, HP
        Pavilion dm1z, HP Pavilion dm3t, HP Pavilion dm3z, HP Pavilion dm4t, HP
21           Pavilion dm4z, HP Pavilion dv4i, HP Pavilion dv4t, HP Pavilion dv5t, HP
        Pavilion dv6t, HP Pavilion dv6t Select Edition, HP Pavilion dv6z, HP
22           Pavilion dv6z Select Edition, HP Pavilion dv7t, HP Pavilion dv7t Select
        Edition, HP G42t, HP G60t, HP G62t, HP G71t, HP G72t, or HP
23           TouchSmart tm2t; and whose computer was shipped to a California
24           address.

25        Excluded from the class are purchasers who returned their computers, purchasers

26   whose computers were equipped with a dual-band wireless card, and purchasers of the

27   dv5t computers who selected a wireless card requiring an additional payment.

28

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**DISCUSSION**

A.    Legal Standard

"Before certifying a class, the trial court must conduct a 'rigorous analysis' to determine whether the party seeking certification has met the prerequisites of Rule 23." Mazza v. American Honda Motor Co., Inc., 666 F.3d 581, 588 (9th Cir. 2012) (citation and quotation omitted).

The party seeking class certification bears the burden of affirmatively demonstrating that the class meets the requirements of Federal Rule of Civil Procedure 23. Wal-Mart Stores, Inc. v. Dukes, __ U.S. __, 131 S.Ct. 2541, 2551 (2011).  In order for a class action to be certified, plaintiffs must prove that they meet the requirements of Federal Rule of Civil Procedure 23(a) and (b).

Rule 23(a) requires that plaintiffs demonstrate numerosity, commonality, typicality and adequacy of representation in order to maintain a class.  First, the class must be so numerous that joinder of all members individually is "impracticable."  See Fed. R. Civ. P. 23(a)(1).  Second, there must be questions of law or fact common to the class.  Fed. R. Civ. P. 23(a)(2).  Third, the claims or defenses of the class representative must be typical of the claims or defenses of the class.  Fed. R. Civ. P. 23(a)(3).  And fourth, the class representative(s) must be able to protect fairly and adequately the interests of all members of the class.  Fed. R. Civ. P. 23(a)(4).  The parties moving for class certification bear the burden of establishing that the Rule 23(a) requirements are satisfied.  Gen'l Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 156 (1982); see also Dukes, 131 S.Ct. at 2551.

If all four prerequisites of Rule 23(a) are satisfied, the court then determines whether to certify the class under one of the three subsections of Rule 23(b), pursuant to which the named plaintiffs must establish that either (1) that there is a risk of substantial prejudice from separate actions; or (2) that declaratory or injunctive relief benefitting the class as a whole would be appropriate; or (3) that common questions of law or fact common to the class predominate and that a class action is superior to other methods

3

1   available for adjudicating the controversy at issue.  See Fed. R. Civ. P. 23(b)(3).

2       The court does not make a preliminary inquiry into the merits of plaintiffs' claims in

3   determining whether to certify a class.  Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177

4   (1974).  The court will, however, scrutinize plaintiffs' legal causes of action to determine

5   whether they are suitable for resolution on a class-wide basis.  See, e.g., Moore v.

6   Hughes Helicopters, Inc., 708 F.2d 475, 480 (9th Cir. 1983).  Making such a

7   determination will sometimes require examining issues that overlap with the merits.  See

8   Dukes, 131 S.Ct. at 2551-52 (acknowledging that court's "rigorous analysis" will

9   frequently entail some overlap with merits of plaintiff's underlying claim).

10  B.    Legal Analysis

11      As mentioned above, plaintiff has moved for class certification once before – the

12  previous motion sought certification of a nationwide class, whereas the current motion

13  seeks certification of a California-only class.  In denying the previous motion, the court

14  found that all four of the Rule 23(a) factors were met, and that the "superiority"

15  requirement of Rule 23(b)(3) was met, but that Rule 23(b)(3)'s "predominance"

16  requirement was not met.  Specifically, the court found that California law could not be

17  applied to a nationwide class, because a conflict existed between California's express

18  warranty law and that of other states, and that the interests of those other states

19  outweighed California's interest in applying its laws on a nationwide basis.  Thus,

20  because California law could not be used on a classwide basis, individual questions of

21  law would predominate over common ones.

22      By narrowing the putative class to include only California residents, plaintiff has

23  attempted to remedy the problem that resulted in the previous motion's denial.  However,

24  defendant's opposition raises a number of new issues, most of which are directed at the

25  "predominance" prong.  The court will begin its analysis there.

26      Defendant's central argument regarding "predominance" is that "plaintiff cannot

27  show through common proof that the challenged statement formed a basis for each

28  putative class member's bargain."  This argument is similar, though not exactly the same,

4

to an argument that defendant presented in opposition to the previous class certification motion.  At that time, defendant argued that California's express warranty law required plaintiff to show reliance on the challenged statement, and that reliance could not be shown on a classwide basis.  Defendant no longer argues that plaintiff must show reliance, and instead, now argues that plaintiff must establish exposure to the challenged statement.  However, because the "reliance"-related precedent is relevant to the "exposure"-related argument, the court finds it useful to revisit its prior discussion regarding reliance:

> HP cites a number of cases finding "reasonable reliance" to be an element of a breach of express warranty claim.  While it is a fairly long list (including a number of cases from this district), plaintiff does appear to be correct that all of the cited cases stem from one California appeals court decision, Williams v. Beechnut Nutrition, 185 Cal.App.3d 135 (1986).  And, notably, the Williams opinion does not discuss the basis for imposing a "reasonable reliance" element, and instead contains only a brief recitation of the elements of an express warranty claim, and a citation to the California Supreme Court's opinion in Burr v. Sherwin Williams Co., 42 Cal.2d 682 (1954).  Burr, in turn, cites to "Cal. Civil Code § 1732" (the predecessor to Cal. Com. Code § 2313), which provided that "[a]ny affirmation of fact or any promise by the seller relating to the goods is an express warranty if the natural tendency of such affirmation or promise is to induce the buyer to purchase the goods, and if the buyer purchases the goods relying thereon."  See Burr, 42 Cal.2d at 696 n.5 (quoting Cal. Civil Code § 1732).

> However, after Burr was decided, California Commercial Code § 2313 came into effect, which represented "a significant change in the law of warranties," according to the California Supreme Court.  Hauter v. Zogarts, 14 Cal.3d 104, 115 (1975).  "Whereas plaintiffs in the past have had to prove their reliance upon specific promises made by the seller," section 2313 "requires no such proof."  Id.  Specifically, section 2313 removed any reference to "reliance," and instead provided that "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise."  Cal. Com. Code § 2313.  The Hauter court also cited to section 2313's comments, which stated that "all of the statements of the seller [become part of the basis of the bargain] unless good reason is shown to the contrary."  Id. (brackets and emphasis added by the Hauter court).  The Hauter court did acknowledge some ambiguity regarding the impact of section 2313, with some commentators arguing that "the basis of the bargain requirement merely shifts the burden of proving non-reliance to the seller," and others contending that "the code eliminates the concept of reliance altogether."

Id. at 115-16.  While the Hauter court saw no need to definitively resolve the reliance question, its opinion made clear that a plaintiff no longer needed to affirmatively establish reliance as an element of his or her express warranty claim.

While the California Supreme Court has not further addressed the issue, a number of California state appeals courts have found that "[a] warranty statement made by a seller is presumptively part of the basis of the bargain, and the burden is on the seller to prove that the resulting bargain does not rest at all on the representation."  Keith v. Buchanan, 173 Cal.App.3d 13, 23 (1985); see also Weinstat, 180 Cal.App.4th at 1229 ("Any affirmation, once made, is part of the agreement unless there is 'clear affirmative proof' that the affirmation has been taken out of the agreement.").  Based on Hauter, Keith, and Weinstat, the court finds that plaintiff is correct that he need not establish reliance as an element of his express warranty claim, and thus, need not establish reliance on a classwide basis.  Instead, reliance becomes relevant only as an affirmative defense, assuming that defendant can affirmatively show that the representation was not part of the "basis of the bargain" (either because the putative class members did not see the representation, or because they knew the actual condition of the product before purchasing it).  And because, as discussed above, defendant has failed to provide evidence showing what percentage of putative class members actually saw the relevant "help me decide" screen, the court finds that the "help me decide" content is still presumptively part of the basis of the bargain.

Dkt. 78 at 7-9.

Again, to be clear, defendant is no longer contending that "reliance" is an element of plaintiff's express warranty claim.  However, its "exposure" argument is based on the same provision of California Civil Code § 2313 discussed at length above, which provides that "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise."  Defendant argues that, in order for a statement to become "part of the basis of the bargain," a plaintiff must show that he was exposed to the challenged statement.

For support, defendant cites to Weinstat v. Dentsply Int'l, Inc., which was cited in the court's prior order regarding class certification.  180 Cal.App.4th 1213 (2010).  Defendant argues that Weinstat "could not have been more clear in its dependence on the plaintiffs' exposure to the challenged statement."

1    The facts of Weinstat help shed light on the basis for defendant's "exposure"

2    argument.  The plaintiffs were a class of dentists who had each purchased an ultrasonic

3    scaler (a device used for teeth cleanings and other dental procedures) from defendant

4    Dentsply.  The product came packaged with an insert titled "Directions for Use," which,

5    among other things, indicated that the product could be used in oral surgery.  After

6    discovering that the products were not actually safe for use in oral surgery, because they

7    contained tubing that was not capable of being properly sterilized, the dentists filed suit

8    for breach of express warranty.

9    Dentsply contended that the challenged statement could not have been "part of

10   the basis of the bargain" because it was found only in the Directions for Use, which were

11   sealed in the product's package.  The court rejected that argument as follows:  "Dentsply

12   reasons that because the Directions were not available until delivery and the 'purchase

13   decision had already been made,' appellants cannot prove that they saw and read the

14   statements prior to the purchase and thus their breach of express warranties claims are

15   doomed.  Not so."  Weinstat at 1228.

16   The Weinstat court found that, "[u]nder Dentsply's view of express warranty law,

17   the company would not be obliged to stand by any statement it made in the Directions."

18   180 Cal.App.4th at 1230.  The court rejected such a view, finding that it would "ignore the

19   practical realities of consumer transactions" and would "render almost all consumer

20   warranties an absolute nullity."  Id.

21   Weinstat cited to the official comments of section 2313, which state that "in actual

22   practice affirmations of fact made by the seller about the goods during a bargain are

23   regarded as part of the description of those goods; hence no particular reliance need be

24   shown in order to weave them into the fabric of the agreement.  Rather, any fact which is

25   to take such affirmations, once made, out of the agreement requires clear affirmative

26   proof."  Weinstat at 1227 (citing section 2313, comment 3).  This court further notes that

27   comment 8 specifically posed the question "What statements of the seller . . . become

28   part of the basis of the bargain?" and answered "all of the statements of the seller do so,

7

1   unless good reason is shown to the contrary."

2          The Weinstat court found that the inclusion of the Directions in the products'

3   packaging was sufficient to make it part of the basis of the bargain.  Critically, the court

4   did not require plaintiffs to show that they actually read the Directions – only that the

5   Directions were provided to them.  Thus, by attempting to require that the putative class

6   members actually read the challenged "help me decide" screen, defendant improperly

7   extends the holding of Weinstat.  While Weinstat does indeed make clear that plaintiff

8   must show "exposure" to the challenged statement[1], that court's definition of "exposure"

9   is not the same as defendant's asserted definition.  "Exposure" does not require that the

10  buyers must prove that they actually read the statement; instead, under Weinstat, it is

11  sufficient for plaintiff to show that the statement was made available to them.  And by

12  limiting the putative class to purchasers during the time period when the relevant

13  language was on the website, and by limiting it to buyers who customized their

14  computers (as opposed to those who bought a pre-configured computer), plaintiff has

15  met its initial burden under Weinstat and included only purchasers to whom the

16  representation was made available.

17         That said, Weinstat also made clear that a seller can show that a certain

18  representation was taken out of the bargain through "clear affirmative proof."  Defendant

19  attempts to meet this burden by presenting a survey of putative class members, which

20  purportedly shows that the vast majority of them did not see the challenged statement.

21         The survey is described in the declaration of Dr. Tom Meyvis.  See generally Dkt.

22  131-11.  Dr. Meyvis surveyed 166 putative class members (i.e., California purchasers),

23  and according to his report, the results indicated that only 6% of respondents

24  remembered clicking on the "help me decide" link, and only 8% of respondents

25  recognized the specific "help me decide" language at issue in this case, though the latter

26

27  _____
    [1] The court thus rejects plaintiff's contention that "'exposure' is irrelevant" because the
28  parties in this case were in privity.  The court GRANTS defendant's motion for leave to
    file its sur-reply, but the privity issue is not relevant to the court's decision on the class
    certification motion.

1   number has been adjusted for false positives.

2   However, there are a number of problems with the survey data.  The first is the

3   fact that the survey was conducted between April and May 2015, whereas the purchases

4   at issue occurred between January 2010 and April 2011 – approximately five years

5   earlier.  Thus, the reliability of the respondents' memory must be taken into account when

6   considering the survey evidence.  Although Dr. Meyvis attempts to address this concern

7   by explaining that the survey "helped respondents reconstruct their purchase decision by

8   walking them through the purchase process," which served to "plac[e] respondents back

9   in their purchase mindset" and "reactivat[e] their goals" (Dkt. 131-11, ¶ 41), the fact

10  remains that five-year-old memories relating to wireless card specifications are not likely

11  to be reliable, despite Dr. Meyvis' best attempts.

12  The second problem relates to the "adjustment for false positives" mentioned

13  above.  The details of the adjustment are not discussed in defendant's opposition brief,

14  but they can be found buried within the Meyvis declaration.  Dr. Meyvis explains that

15  30.7% of the respondents actually reported remembering the challenged "help me

16  decide" language, but that 22.3% also reported recognizing "entirely fictional and

17  nonsensical language" for another laptop component.  Dkt. 131-11, ¶ 16.  Dr. Meyvis thus

18  characterized the 22.3% as a false positive response rate, subtracted it from the 30.7%,

19  and ended up with the 8% figure quoted in defendant's brief.

20  In the court's view, the fact that such a significant percentage (22.3%) of

21  respondents reported remembering language that, in addition to never being on HP's

22  website, is "nonsensical" (described by Dr. Meyvis as presenting concepts that "were not

23  meaningful in any context") undermines the reliability of the survey evidence, especially

24  when coupled with the fact that the survey was conducted five years after the purchases

25  at issue.  Indeed, if nearly one-quarter of respondents recalled seeing language that was

26  not only fictional – but nonsensical – what is the basis for believing that the remaining

27  respondents had memories that were any more reliable?  The court finds it transparently

28  self-serving for defendant to assume that the 69.3% of respondents who did not recall

United States District Court
Northern District of California

seeing the challenged language have reliable memories, while discarding the majority of the remaining 30.7% of respondents as unreliable.  Put another way, even when faced with the finding that 73% of all positive responses were false positives[2], the survey made no attempt to determine what percentage of the negative responses were false negatives.  Overall, given the long lapse in time between the purchases and the survey, and given the demonstrated unreliability of the responses, the court finds that this survey evidence falls short of the "clear affirmative proof" needed to take the challenged affirmation out of the bargain.

Defendant attempts to bolster the probative value of the new survey by combining it with website tracking data collected during "an interval that includes the putative class period."  Dkt. 131-11, ¶ 80.  According to defendant, when the survey evidence is combined with the website tracking evidence, one is able to conclude that "at least 85% of the putative class could not have possibly been exposed to the language at issue."

Again, in discussing this website tracking data, defendant leaves out important details.  The website data cited by defendant was already submitted to the court in connection with the first motion for class certification, and was addressed in the court's previous order:

> HP provides its own evidence that less than 4.3% of all website visitors visited any of the 20 different "help me decide" screens, and that of that 4.3%, the average person visited only 2.1 of the "help me decide" screens.  See Dkt. 64 at 9.  But, importantly, HP does not provide any evidence showing what percentage of actual purchasers (i.e., putative class members) visited the "help me decide" screens.  Plaintiff provides his own evidence that only 2.5% of visitors to HP's website ultimately purchased any product.  See Dkt. 69-2 at 7.  In other words, out of all visitors to the relevant HP website, the evidence indicates that the number of people who viewed a "help me decide" screen was higher than the number of people who made a purchase – leaving open the possibility that most (or even all) of actual notebook purchasers did visit a "help me decide" screen.

Dkt. 78 at 6.

In other words, the fact that defendant's website tracking data included all website

---

[2] See Dkt. 131-11, ¶ 68.

1   visitors – not just purchasers – meant that it fell short of clearly, affirmatively proving that

2   the actual class members did not see the challenged representation.  While that problem

3   remains, defendant's evidence also faces a new problem on this motion – the fact that

4   the website tracking data is not limited to website visitors within California.  Thus, the

5   website tracking data is now overbroad in two respects:  (1) it includes all website

6   visitors, not just purchasers, and (2) it includes visitors from the entire country, not just

7   California.

8       Defendant attempts to remedy these deficiencies by combining the website

9   tracking data with the survey data (which was limited to actual purchasers within

10   California), but the court has already explained the reasons for questioning the reliability

11   of the survey data.  Simply put, if defendant were able to present evidence showing that

12   many of the actual class members did not actually click on the relevant "help me decide"

13   screen when making their purchase, they would have a strong argument against

14   certification.  Instead, it proffers unreliable or tangentially-relevant evidence, which falls

15   short of the "clear affirmative proof" needed to show that the class members were not

16   actually exposed to the relevant representation.  Thus, while defendant undoubtedly

17   retains the right to present evidence on its affirmative defense of non-exposure, its

18   attempt to rebut a finding of predominance by showing that individual issues will

19   predominate over common ones fails.

20       Defendant also raises a challenge to predominance that is separate from the

21   "exposure" argument; namely, that "consumers in fact expected to receive single-band

22   cards."  Defendant emphasizes that "it is undisputed that HP never used the words 'dual-

23   band' in connection with the single-band wireless card."  True enough, but it is also

24   undisputed that HP claimed that the wireless cards would function on the 5 GHz band or

25   the 802.11a wireless protocol, and undisputed that the wireless cards did not actually

26   have that functionality.  The term "dual-band" is merely a way to collectively refer to those

27   two challenged statements.   Defendant also repeats an argument that it made during the

28   previous class certification motion – that the word "most" in one of the challenged

United States District Court
Northern District of California

11

1   representations saved the statement from being false.  The court addressed the issue as

2   follows:

3       [T]he "help me decide" language states that: "This technology allows
4       flexibility to connect to most available industry standard base WLAN
        (802.11b, 802.11a, 802.11g, and 802.11 draft N) infrastructures."  In
5       context, the statement means that the wireless card can connect to "most"
        infrastructures writ large, but the inclusion of specific protocols in the
6       parenthesis can lead to only one conclusion – that the word "most" includes
        at least all of those specifically-named protocols, and may include other (but
7       not all) unnamed protocols.  HP's argument regarding the word "most" is
        therefore rejected.
8
9   Dkt. 78 at 7.

10          Defendant further argues that different customers may have had different

11  interpretations of the challenged language, and that the presentation of such evidence

12  would be impossible in a class action.  Defendant again points back to the survey

13  evidence, noting that only 13% of respondents reported receiving wireless cards without

14  expected functionality.  These arguments miss the point made in Weinstat, that "section

15  2313 focuses on the seller's behavior and obligation – his or her affirmations, promises,

16  and descriptions of the goods."  Weinstat, 180 Cal.App.4th at 1228 (emphasis in original).

17          Defendant's final challenge to predominance is based on the "notice" element of

18  an express warranty claim.  Defendant argues that, "because reasonable notice is an

19  issue of fact that must be determined from the particular circumstances in each individual

20  case," the issue of whether the notice was sufficient "is a predominantly individual

21  inquiry."  Dkt. 131 at 25 (internal quotations omitted).  The court addressed this argument

22  as part of its previous class certification order, finding that "even if the notice is not

23  sufficient, the sufficiency issue would be common to the entire class."  Dkt. 78 at 10.

24          Having addressed the arguments raised by defendant, the court finds that plaintiff

25  has indeed established that common issues would predominate over individual ones.

26  Each putative class member customized and purchased a laptop computer, in California,

27  during the time period when the challenged "help me decide" language was available on

28  the website, and received a computer equipped with a wireless card that did not have the

United States District Court
Northern District of California

1    promised functionality.

2        The court will now address the Rule 23(a) factors.  First, as to numerosity, the

3    court previously found this factor met with respect to a proposed nationwide class, and

4    finds that it is also met with respect to the narrowed California class, which still includes

5    purchasers of 42,000 computers.

6        Second, as to commonality, defendant argues that its "new survey confirms that

7    the proposed class is filled with thousands of consumers who never saw the HMD

8    language, did not interpret that language to promise a 'dual-band' card, do not know what

9    a dual-band card is, and never intended to purchase a dual-band card."  Dkt. 131 at 23.

10   The court has already addressed the unreliability of the survey evidence above, and

11   further notes that these arguments relate more to predominance than to commonality.

12       To establish commonality, plaintiff need not show that "every question in the case,

13   or even a preponderance of questions, is capable of class wide resolution.  So long as

14   there is 'even a single common question,' a would-be class can satisfy the commonality

15   requirement of Rule 23(a)(2)."  Wang v. Chinese Daily News, Inc., 737 F.3d 538, 544 (9th

16   Cir. 2013) (quoting Dukes, 131 S.Ct. at 2556); see also Mazza, 666 F.3d at 589

17   ("commonality only requires a single significant question of law or fact").  Thus, "[w]here

18   the circumstances of each particular class member vary but retain a common core of

19   factual or legal issues with the rest of the class, commonality exists."  Evon v. Law

20   Offices of Sidney Mickell, 688 F.3d 1015, 1029 (9th Cir. 2012) (citations and quotations

21   omitted).

22       Given this standard, the court finds that the commonality requirement is met.

23   Each putative class member purchased a laptop computer, in California, from

24   defendant's website, during a time when a challenged representation (either describing

25   the laptop's wireless card as capable of operating on the 5 GHz band or on the 802.11a

26   wireless protocol) was available to the buyers on the website.  Each putative class

27   member also suffered a common injury when they received a wireless card that was

28   incapable of the promised functionality.  That is more than sufficient to establish

United States District Court
Northern District of California

13

1   commonality.

2        As to typicality, the court previously found that plaintiff's claims were typical of

3   those of the class, and defendant presents no argument as to why the court should re-

4   visit that finding.  Thus, the court finds that the typicality requirement is met.

5        Finally, as to adequacy, defendant argues that both the plaintiff and his counsel

6   are inadequate.  Defendant first points to the fact that, while the complaint pleaded a

7   claim under the CLRA, plaintiff's counsel "unilaterally decided not to pursue certification

8   of the CLRA claim," even though a CLRA claim "offers a broader range of damages than

9   express warranty claims (including potential punitive damages and attorneys' fees)."

10  Presumably, defendant does not contend that punitive damages are appropriate in this

11  case, nor does the court have any basis to find as much.  Thus, the court cannot find that

12  the choice to forego punitive damages was contrary to the interests of the class.

13  Similarly, defendant has not provided any basis to find that the decision not to pursue

14  attorneys' fees under a CLRA class claim was contrary to the interests of the class.

15       Defendant also argues that plaintiff "disregards the interests of putative plaintiffs

16  with respect to damages," specifically, incidental and consequential damages.  Defendant

17  points out that plaintiff claims to have incurred incidental and consequential damages, but

18  "presumably recognizing that such damages are not susceptible of measurement across

19  the entire class for purposes of Rule 23(b)(3) by common proof," plaintiff "simply dropped

20  them on behalf of the class."  The facts alleged by defendant suggest that plaintiff may

21  have given up his own right to incidental and consequential damages, but defendant

22  provides no basis on which to find that plaintiff's decision was contrary to the interests of

23  the class, as there is no indication that any of the absent class members actually incurred

24  incidental or consequential damages.  Thus, the court finds that the adequacy

25  requirement is met.

26       Turning to Rule 23(b)(3), and having already addressed the "predominance"

27  requirement, the remaining question is whether plaintiff has shown that a class action is

28  superior to other available methods for fairly and efficiently adjudicating the controversy.

United States District Court
Northern District of California

14

1   Defendant's argument against class treatment is based on its survey evidence, the

2   unreliability of which is addressed above.  The court previously found that the superiority

3   requirement was met, and finds no basis on which to re-visit that finding.

4          Finally, defendant argues that the proposed class is overbroad and

5   unascertainable.  This argument is largely premised on defendant's overly-stringent view

6   of the "exposure" requirement under Weinstat, as defendant argues that there is no way

7   of ascertaining which putative class members actually read the relevant "help me decide"

8   screen.  However, as discussed above, the class properly includes any purchasers to

9   whom a challenged statement was made available, absent clear affirmative proof that

10  they did not actually see the statement.  Defendant also argues that the class should be

11  limited to buyers who actually customized their wireless cards, but the court finds it

12  sufficient that the class is limited to buyers whose computers included a wireless card

13  without the promised functionality.  Whether or not those buyers may have chosen a

14  different wireless card from the default option is irrelevant, because, by limiting the class

15  to the time period when the challenged "help me decide" language was published on

16  HP's website, and by limiting the class to buyers whose wireless card did not conform

17  with the challenged representation, plaintiff has ensured that the class includes only

18  those buyers whose computer did not conform to the website's description, regardless of

19  whether the wireless card was the default option.

20                                        **CONCLUSION**

21         Having found the requirements of Rule 23(a) and Rule 23(b)(3) met, the court

22  GRANTS plaintiff's motion for certification of a California class.

23

24         **IT IS SO ORDERED.**

25  Dated:  December 18, 2015

26                                        _____

27                                        PHYLLIS J. HAMILTON
                                          United States District Judge

28